723 A.2d 423

STATE of Maryland

v.

Dwight EVANS.

State of Maryland

v.

Charles Sykes–Bey.

Nos. 28, 32, Sept. Term, 1997.

Court of Appeals of Maryland.

Jan. 26, 1999.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for Petitioner.

Margaret A. Mead (Roland Walker, Walker Van Bavel, Amaral & Mead, P.A., Norman Hochberg, all on brief), Baltimore, for Respondent in No. 28.

Kreg Paul Greer, Towson, for Respondent in No. 32.

Before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, and ROBERT L. KARWACKI (retired, specially assigned), JJ.

RAKER, Judge.

In these two cases Respondents were physically detained by the police on the basis of probable cause to believe that each had participated in an illegal drug transaction. In both instances, the police searched Respondents while they were detained and released them with the intention of later charging them with violation of the controlled dangerous substance laws of this State. We shall hold that both detentions were lawful arrests under Maryland law, that the searches incident to those arrests were consistent with the Fourth Amendment to the United States Constitution, and consequently that the Circuit Court for Baltimore City properly denied Respondents' motions to suppress.

I.

These two cases present the identical issue for appeal. The State filed a petition for writ of certiorari in both Respon-

dents' cases based upon the central question of what constitutes an arrest under Maryland law. Respondents argue that the disputed evidence in their cases should have been suppressed because the police obtained the evidence by conducting searches that were illegal because they were not incident to a lawful arrest. The crucial contention of Evans and Sykes–Bey is that their initial detentions, on June 9, 1994 and February 16, 1994, respectively, did not constitute arrests under Maryland law and therefore the searches conducted were unlawful. Because of this exact identity of the central issue debated by the parties, we have consolidated Respondents' two cases for purposes of deciding these appeals. The relevant facts of the two cases are set forth as follows:

### A. *State v. Evans*

In June of 1994, Officer Kenneth Rowell was involved with other members of the Baltimore City Police Department Violent Crimes Task Force in an undercover operation known as "Operation Mid–East." The goal of Operation Mid–East was to identify and combat street-level drug transactions. In accordance with that goal, once the police had probable cause to believe a suspect had engaged in an illegal drug transaction, that suspect was not taken to the police station and processed. Instead, the police detained the suspect, ascertained the suspect's identity and address, performed an outstanding warrant check, conducted a search of the suspect's person, seized any drugs or currency, and, finally, released the suspect. The Baltimore City Police employed this procedure to protect the integrity of the ongoing undercover operation, later conducting a "mass sweep" of arrests of the suspects once the operation had concluded.[1]

---

1. At trial, during cross-examination by defense counsel, Officer Rowell succinctly stated in part the goals and procedure of Operation Mid–East:

 DEFENSE COUNSEL: [W]hy in the world [would] a person that's out on the street in Baltimore that has drugs on him, why would you take a person's picture and just let a person waltz off if that were [the] situation? . . .

At 7:45 p.m. on June 9, 1994, Officer Rowell was involved in Operation Mid–East in the vicinity of Monument and Port Streets in Baltimore City. Officer Rowell had been outfitted with a "Kel Set," or body wire. Although the record is not clear as to who approached whom, at that time a conversation took place between Officer Rowell and Respondent Dwight Evans. Rowell testified that he asked Evans if he was working and, if so, what Evans had. According to Officer Rowell, Evans responded that he had "dimes of coke." Rowell requested a dime.

Officer Rowell then accompanied Evans as the pair walked east on Monument Street. At that point, Rowell testified that Evans "reached into his rear end, down inside his pants, removed the cocaine, [and] handed me one." In exchange, Officer Rowell handed Evans a ten dollar bill. The serial number of the currency had previously been photocopied by the police for the purpose of subsequent identification. After this transaction, the pair separated.

Officer Rowell continued along Monument Street toward Milton Avenue. After Officer Rowell assured himself that no one was in the vicinity, he transmitted a description of Evans to a nearby "identification team" composed of task force members. Approximately five to ten minutes later, the team stopped Evans. Officer Rowell, who had entered his automobile and repeated his description of the suspect, drove by the area where Evans had been detained. Rowell confirmed that the person detained by the identification team was in fact the same individual from whom he had purchased the cocaine.

After the confirmation of Evans's identity as the suspected drug dealer, a member or members of the technical team

---

OFFICER ROWELL: Because it's the make-up of the operation.... The operation is designed to buy drugs, to buy as much drugs as we can within a specific period of time. Then once we've accomplished that, to get the paperwork together for these subjects and come back on a later date and try to arrest them all on one day or as many as we can on one day ... to make an impact in the area[,] to let present, future and past drug dealers know that we're serious about cleaning up the areas, and we're trying to make an impact in these areas.

searched Evans. Because the identification team had difficulty locating any suspected controlled substances, someone again contacted Officer Rowell. Rowell indicated that Evans had taken the cocaine from his "rear area." Based on this information, the identification team searched Evans again. The two searches eventually produced $163.00 in United States currency, including the ten dollar bill that Officer Rowell had earlier handed Evans, as well as nine green-topped vials containing cocaine.

Evans was given a receipt for the seized money and photographed by the technical team. Police procedure pursuant to Operation Mid–East required that a suspect verify his or her identity before being released. Accordingly, the police called Evans's father, who came to the area and confirmed his son's identity. At that time, the police did not transport Evans to the police station, nor did they formally charge him, nor did they take Evans before a District Court Commissioner. Rather, the officers apparently followed an internal procedure whereby one of them completed a document entitled "Investigated and Released." [2] Evans was then released.

On July 5, 1994, the Grand Jury for Baltimore City indicted Evans on three counts: distribution of cocaine, in violation of Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27, § 286; [3] possession of cocaine with an intent to distribute, in violation of § 286; and possession of cocaine, in violation of § 287. Evans filed a motion to suppress all the evidence seized by the police. The suppression motion, heard in the Circuit Court for Baltimore City by Judge John N. Prevas,

---

2. At the suppression hearing, Officer Wanda Dobbins, a member of the technical team, testified in response to a question by the trial court that filling out the "Investigated and Released" document was generally the alternative to taking a suspect to the police station and immediately processing formal charges. That testimony, however, did not expressly indicate whether the "Investigated and Released" form was filled out in this case. Rather, at the suppression hearing, Officer Dobbins testified that she filled out an "ID Sheet" after Evans' initial detention.

3. Unless otherwise specified, all statutory references herein shall be to Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27.

was based primarily on the ground that the nine vials of cocaine were not lawfully seized because Evans had not been arrested. The trial court denied the motion:

I think that your use and the officer's use of the word "arrest" is a word of art at this point because basically it was a detention and [Evans] was not free to go until they secured his identification. So, it really was, in fact, an arrest for Fourth Amendment purposes.

For Fourth Amendment purposes, it's not necessary that [Evans] be taken to the District Court Commissioner, given a statement of charges, and sent to a Commissioner for processing ... for bail in order for it to be an arrest.

At trial, Evans was convicted of distribution of cocaine and possession of cocaine with an intent to distribute. Evans was sentenced to a term of incarceration of fourteen years, ten years without the possibility of parole, for distribution of a controlled dangerous substance and to a consecutive term of incarceration of five years for possession with an intent to distribute. Evans noted a timely appeal to the Court of Special Appeals.

### B. *State v. Sykes–Bey*

Several months before the incident that led to the arrest of Respondent Evans, Officer Rowell was teamed with Officer Denise Wilkes. The pair assisted other members of the Baltimore City Police Department Violent Crimes Task Force in executing "Operation Midway," an undercover drug sting set up in much the same manner as that of Operation Mid–East. The remaining members of the police task force were divided into two groups: surveillance officers in a van who would videotape transactions involving Rowell and Wilkes, and an arrest team, or "identification team," that identified and searched the suspects after the occurrence of a suspected drug transaction.

On February 16, 1994, Officers Rowell and Wilkes went to the vicinity of Barclay and 24th Streets in Baltimore City to buy illegal drugs. Wilkes was told by the surveillance team to

approach a man, later identified as Lorenzo Meeks, who was standing on the corner of Barclay and 24th Streets. Officer Wilkes asked Meeks if he was "working," to which Meeks responded, "What you want?" Wilkes replied, "I want some coke." Meeks declared that his inventory consisted only of readily smokeable rock or crack cocaine, as opposed to powder cocaine.[4]

By this point, Respondent Charles Sykes–Bey had joined Meeks and Officer Wilkes. Meeks either stated to or inquired of Sykes–Bey, "You got powder." Officer Wilkes was then asked how much powder cocaine she wanted; Wilkes answered that she wanted "two dimes." Sykes–Bey retorted, "Oh no, I thought she wanted some weight, I ain't going to go out and dig in no bag for no dime."[5] Officer Wilkes, now joined by Officer Rowell, indicated to Sykes–Bey that she couldn't afford to buy "weight;" hence, she decided instead to purchase two dimes of rock cocaine from Meeks. Apparently dissatisfied by this turn of events in the competitive marketplace, Sykes–Bey commented, "Thanks a lot for nothing."

After the purchase, Officers Wilkes and Rowell walked away from Meeks and Sykes–Bey. Officer Wilkes transmitted a description of both Meeks and Sykes–Bey to the surveillance team, describing the latter as "the guy in the purple with black tennis shoes on and blue hoodie—all he is dealing is weight." Based on this description, surveillance team Officer

---

**4.** The term Meeks actually used was "ready," telling Officer Wilkes, "I only got ready." At the suppression hearing, Officer Marucci confirmed for the court that in street parlance "ready" signifies smokeable cocaine base, also known as rock cocaine, a different product than powder cocaine. Whereas Officer Wilkes was initially seeking only a small amount of powder cocaine, what Meeks had to offer did not meet her primary interest.

**5.** As to the distinction between "powder" and "weight," Officer Marucci testified as follows:

Instead of buying [five] or [ten dollar] vials or capsules on the street, ... you would be talking about buying an eighth of an ounce, quarter of an ounce, half ounce, or ounce. That would be weight. It would be bulk powder, it wouldn't be buying dimes or nickels on the street.

Thomas Marucci ordered identification team Officer David Brendel to stop and detain Sykes–Bey.

Officer Brendel stopped Sykes–Bey as instructed, and ascertained his identity, address, and birth date. Officer Brendel then searched Sykes–Bey and seized $134.00 in United States currency. Officer Brendel photographed the suspect and wrote Sykes–Bey a receipt for the seized currency. The officer then released Sykes–Bey.

In the meantime, another officer or officers had detained and searched Meeks and recovered the marked money Officer Wilkes had given Meeks in exchange for the two dimes of cocaine, as well as twenty-four baggies of cocaine. In addition, Officer Robert Maglia had recovered a plastic bag containing eleven vials of cocaine from behind a billboard that Sykes–Bey had located immediately before handing an unidentified object to an unidentified woman.[6]

On March 14, 1994, the Grand Jury for Baltimore City returned a three count indictment against Sykes–Bey: attempted distribution of cocaine, in violation of § 286; possession of cocaine with an intent to distribute, in violation of § 286; and possession of cocaine, in violation of § 287. Claiming the currency seized by Officer Brendel was the product of an unlawful search, Sykes–Bey filed a motion to suppress that evidence. The Circuit Court for Baltimore City denied that motion. As in *Evans,* Judge Prevas rejected the argument that the search of Sykes–Bey was constitutionally infirm because it did not follow a lawful arrest. Sykes–Bey was tried by a jury. The jury was unable to reach a verdict on any of the three charges and Judge Prevas declared a mistrial.

---

**6.** After Marucci ordered the detention of Sykes–Bey, but before that seizure actually occurred, Marucci witnessed Sykes–Bey engage an unidentified woman in a very brief conversation. The woman then handed Sykes–Bey an unidentified amount of money. After receiving the money, Sykes–Bey walked to the side of a store located on 24th Street, placed his hand behind a billboard attached to the side of the building, and returned to give the woman an unidentified object.

Subsequently, Sykes–Bey was charged by criminal information with three additional counts for the incident arising on February 16, 1994: conspiracy to distribute cocaine, conspiracy to possess cocaine with an intent to distribute, and conspiracy to possess cocaine, all in violation of § 290. Sykes–Bey was convicted by a jury on all six counts. The trial court sentenced Sykes–Bey to an eighteen year term of imprisonment, ten years without the possibility of parole, for possession of cocaine with an intent to distribute and to two concurrent eighteen year terms of incarceration for attempted distribution of cocaine and for conspiracy to distribute cocaine.[7] Sykes–Bey noted a timely appeal to the Court of Special Appeals.

## C.

A divided panel of the Court of Special Appeals reversed Evans's convictions, holding that the initial detention of Evans on June 9, 1994 was not an arrest, that the full search conducted by the police incident to that detention was therefore unconstitutional, and, consequently, that the trial court erred in denying Evans's motion to suppress. *Evans v. State,* 113 Md.App. 347, 688 A.2d 28 (1997).

While acknowledging that Evans's detention was a seizure for purposes of the Fourth Amendment, the intermediate court rejected the State's argument that "every actual seizure of the person that is more intrusive than a *Terry* stop is *ipso facto* an actual arrest." *Id.* at 356, 688 A.2d at 33. The majority concluded instead that a "degree of intrusiveness 'beyond *Terry*' . . . does not necessarily mean that the State has satisfied the arrest requirement when it seeks to justify [a search] on the basis of an arrest." *Id.* at 357, 688 A.2d at 33 (quoting 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 5.1(a), at 10 (3d ed.1996) for support: "Courts do (and, indeed, should).

---

7. For sentencing purposes, the trial court merged the convictions for conspiracy to possess cocaine with an intent to distribute, conspiracy to possess cocaine, and possession of cocaine into the conviction for possession of cocaine with an intent to distribute.

take a somewhat different approach when it is the *prosecution* which is contending that an arrest was made at a particular time, so as to justify a search . . . .").

Having set out to determine the required predicate to initiate a warrantless search incident to a lawful arrest, the Court of Special Appeals concluded that the United States Supreme Court

> insist[s] not only on the fact of a *formal* arrest as the indispensable predicate for a search incident to lawful arrest but also insist[s] that the arrest be "custodial" in nature and *not simply a processing at the scene of the arrest.*

*Id.,* 688 A.2d at 33 (emphases added). Finally, the majority turned to a review of Maryland law on arrest and stated that "Maryland case law has . . . been even more explicit than has the Supreme Court in delineating precisely what is an arrest for purposes of justifying a Fourth Amendment search incident to lawful arrest." *Id.* at 359, 688 A.2d at 34.

After declaring that "[a]ll of the Maryland cases agree that an important factor in deciding whether an arrest actually took place is whether the detaining officers intended to arrest the detainee," *id.* at 360–61, 688 A.2d at 35, the majority held:

> What is required [for a lawful arrest and search incident thereto] is that there be 1) on the part of the arresting officer *an actual subjective intent to arrest* the suspect and 2) some communication of that fact to the suspect. . . . What we hold was lacking in this case, however, was 1) any indication on the part of the officers to arrest [Evans] and 2) any communication of the fact of arrest to [him].

*Id.* at 361 n. 7, 688 A.2d at 35 n. 7 (emphasis added).

The dissent reasoned that the majority had incorrectly defined an arrest to be "not only the taking, seizing and the detention of another, but also the placing of formal charges." *Id.* at 369, 688 A.2d at 39. On the contrary, because "[n]o one can seriously contend that [Evans] was not 'arrested' by the police when he was stopped and detained and then subjected to two searches . . . ," *id.* at 376, 688 A.2d at 42, the dissent believed the analysis of Evans's appeal

should be confined to a determination of whether, at the time of the police restriction of Evans's liberty, the police had the necessary probable cause to permit them to arrest and to make a reasonable search, or whether the search was justified by some other exception to the warrant requirement.

*Id.*, 688 A.2d at 42–43.

In an unreported opinion, the Court of Special Appeals also reversed Sykes–Bey's convictions, explicitly relying upon its decision in *Evans* and holding that the circuit court erred in denying Sykes–Bey's motion to suppress. The State petitioned this Court for certiorari in both cases. We granted certiorari to resolve the identical question presented by the State in its petitions for certiorari:

> What constitutes an "arrest" for the purpose of applying the search incident to arrest exception to the warrant requirement? [8]

## II.

■ Before this Court, Evans recognizes that the right of the police to search a suspect incident to a lawful arrest follows automatically from the arrest. *See United States v. Robinson*, 414 U.S. 218, 225–26, 94 S.Ct. 467, 472, 38 L.Ed.2d 427 (1973). Although he concedes the police had sufficient probable cause to arrest him at the time of the June 9, 1994 incident, Evans argues that the police did not in fact execute such an arrest pursuant to Maryland law. From that premise, he argues that the search subsequent to the nonexistent arrest was unconstitutional, that any evidence seized during that search should not have been admitted into evidence against Evans at trial.

---

**8.** The State also presented a second question, "Was the search of [Respondents] permissible pursuant to *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), as a search based on probable cause for evanescent evidence?" Because of our resolution of the two cases under the first question, however, we need not reach the second.

■ To support his argument that the police seizure on June 9, 1994 was not an arrest, Evans notes that the police never issued him a summons or any other type of charging document. Evans cites several cases previously decided by this Court for the proposition that the right to arrest is not the equivalent of actually executing that arrest. Rather, the record must demonstrate that a lawful arrest was consummated. Evans then reiterates the decisive theme of the decision by the intermediate appellate court in its reported opinion: a lawful arrest under Maryland law requires the subjective intent by the police to actually make an arrest at or near the time the suspect is initially detained. The officers in this case admitted on cross-examination that they had no intent to arrest Evans at the time of the incident. Furthermore, they testified that Evans was not arrested during his initial detention nor, consequently, was their search of him incident to an arrest. Evans argues, therefore, that the encounter between Evans and the police did not constitute an arrest.[9]

Sykes–Bey presents essentially the same argument as Evans.[10] Arguing that he was not arrested by the police on

---

**9.** Both Evans and Sykes–Bey have highlighted testimony by police officers Rowell and Marucci, respectively, in which the officers concede that they never arrested Respondents and that the searches they conducted were thus not incident to an arrest. While the Court of Special Appeals also found these police concessions critically lethal to the State's position that Respondents were in fact arrested, *Evans v. State*, 113 Md.App. 347, 360–62, 688 A.2d 28, 35 (1997), we concur with the trial court's assessment that such comments are irrelevant. The occurrence *vel non* of an arrest is a legal issue to be determined initially by the trial court, and subject to review on appeal. As should be clear from our holding today, the subjective thoughts of the detaining officer are not controlling. *See infra* Part IV.

**10.** There are two significant distinctions between the arguments of Evans and Sykes–Bey. The first difference is that Sykes–Bey specifically argues that the decisions of the United States Supreme Court in *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), and *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), foreclose the admission of the evidence seized from him in his case. As his argument is equally applicable to Evans, we shall address this contention within our discussion of the legal issues. *See infra* Part V.B.

February 16, 1994, Sykes–Bey notes that over one month elapsed between the search and the subsequent arrest. He argues this delay rendered the search unconstitutional because the search was not contemporaneous with the arrest. According to Evans and Sykes–Bey, the judgments of the Court of Special Appeals should be affirmed.

The State makes the same legal argument in both cases. The State takes issue with the rationale of the Court of Special Appeals in creating three categories of police-citizen encounters which implicate the Fourth Amendment: stops, arrests, and custodial arrests. The State contends that Maryland law and federal constitutional law recognize only two such categories: stops and arrests.

The State asserts that Evans and Sykes–Bey were arrested when detained and searched by the Baltimore City Police. First, the State contends that the police properly detained Evans and Sykes–Bey based on probable cause that each had participated in an illegal drug transaction. Second, the State argues that the police had the requisite intent to prosecute· the two detainees, albeit at a later date. Accordingly, Evans and Sykes–Bey were validly arrested while detained and searched by the police, and the searches incident to those arrests survive constitutional scrutiny.

Finally, the State maintains that the Court of Special Appeals created an unworkable framework for determining when a lawful arrest has occurred under Maryland law. The State argues that the intermediate appellate court's rigid focus on the occurrence of "booking" or formal charging as an inviola-

---

The second significant distinction between the argument of Evans and Sykes–Bey is that Sykes–Bey does not concede the existence of probable cause at the time of his initial seizure by the police and argued before the Court of Special Appeals that the seizure was illegal due to the absence of probable cause. The intermediate appellate court relied solely upon *Evans v. State,* 113 Md.App. 347, 688 A.2d 28 (1997), in reversing Sykes–Bey's convictions, and thus did not address the probable cause ·argument. Because the Court of Special Appeals did not decide the issue of probable cause, nor did the State include it in its petition for writ of certiorari, nor did Sykes–Bey file a cross-petition, we shall not consider the issue. *See* Md. Rule 8–131(b)(1).

ble prerequisite to a lawful arrest is unsupported by Maryland law.

## III.

The singular question we need resolve in the instant cases actually presents two fundamental and distinct issues. The first is whether the police officers' encounters with Evans and Sykes–Bey each constituted an arrest under the law of Maryland. The main contention raised by both Respondents—that under Maryland law their detentions by the police in these cases were not valid arrests, and as such, the subsequent searches were constitutionally infirm—can essentially be addressed by resolving this first issue.

The second issue arises only if we determine that the police lawfully arrested Respondents at the time of their initial detentions. If so, we must then decide whether the officers' searches of Evans and Sykes–Bey were justifiable under the "search incident to arrest" exception to the warrant requirement of the Fourth Amendment. Related to this, Respondent Sykes–Bey asserts that even if his initial police detention was a valid arrest under Maryland law, United States Supreme Court precedent nevertheless compels the conclusion that the search in his case was invalid under the Fourth Amendment.

Our analysis addresses these distinct issues and contentions in turn.

## IV.

A police officer may make a warrantless arrest for a felony when the officer has probable cause to believe that a felony has been committed and that the arrestee committed it. *See* Article 27, § 594B(c); *Collins v. State*, 322 Md. 675, 679, 589 A.2d 479, 481 (1991) (noting that Article 27, § 594B is declarative of the Maryland common law governing warrantless arrests).[11] For purposes of our decision, the members of

---

11. The Supreme Court has made clear that this rule of arrest is consonant with the dictates of the Fourth Amendment. *United States v.*

the "identification teams" of Operations Mid–East and Mid-way had probable cause to believe that Evans and Sykes–Bey, respectively, had committed a number of possible drug-related felonies. Hence, Respondents' initial detentions by the police were lawful: Evans concedes the existence of probable cause; as to Sykes–Bey, the trial judge made a finding of probable cause that remains undisturbed on his appeal. *See supra* note 10.

■ The threshold issue in these cases, however, is not whether the police had the legal authority to arrest Evans and Sykes–Bey but whether the initial detentions of Respondents constituted arrests under Maryland law.[12] Resolution of this initial issue depends in turn on the determinative question of whether the release of Evans and Sykes–Bey by the Baltimore City Police without the act or intent of immediately charging them with criminal activity was inconsistent with the required elements of an arrest under Maryland law.

■ In *Bouldin v. State,* 276 Md. 511, 350 A.2d 130 (1976), we discussed at length the requirements for an arrest under Maryland law. Writing for the Court, Chief Judge

*Watson,* 423 U.S. 411, 416–17, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976).

**12.** While recognizing the importance of determining whether the police detentions in these cases constituted arrests, both with respect to the Maryland common law of arrest and for purposes of the Fourth Amendment, we emphasize that the primary matter before this Court is the legality of the seizure of evidence incident to the *initial* detentions of Evans and Sykes–Bey, conducted on June 9, 1994, and February 16, 1994, respectively. Respondents have not contested that the arrests following indictment (referred to in the testimony as "sweep" arrests) and consummating the undercover operations were illegal. Nor have they attacked the legality of any search performed or of any evidence seized pursuant to the sweep arrests. Moreover, there is no indication on the record that any contraband was discovered on either Respondent when each was arrested during the sweep, even presuming that full searches incident to the later arrests were performed. Finally, there has been no suggestion that the police effected similar detentions of Respondents, based upon the original probable cause, intermittently, that is, between the initial detentions and the sweep arrests.

Murphy set forth the essential elements of an arrest under Maryland law:

> [A]n arrest is the taking, seizing, or detaining of the person of another (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. 5 Am.Jur.2d *Arrest* § 1 (1962). It is said that four elements must ordinarily coalesce to constitute a legal arrest: (1) an intent to arrest; (2) under real or pretended authority; (3) accompanied by a seizure or detention of the person; and (4) which is understood by the person arrested. 6A C.J.S. *Arrest* § 42 (1975); Creamer, *The Law of Arrest, Search and Seizure,* ch.3, at 49 (1968).

*Id.* at 515–16, 350 A.2d at 133. Immediately following this passage, the Court added:

> We have defined an arrest in general terms as the detention of a known or suspected offender *for the purpose of prosecuting him for a crime.* McChan v. State, 238 Md. 149, 207 A.2d 632 (1965); *Cornish v. State,* 215 Md. 64, 137 A.2d 170 (1957).

*Id.* at 516, 350 A.2d at 133 (emphasis added).[13] Notwithstanding this gratuitous language in *Bouldin* and its incantation in a number of Maryland cases since, *see, e.g., Barnhard v. State,* 325 Md. 602, 611, 602 A.2d 701, 705–06 (1992); *Little v. State,* 300 Md. 485, 509–10, 479 A.2d 903, 915 (1984); *Jones v. State,*

---

13. *Cornish v. State,* 215 Md. 64, 67–68, 137 A.2d 170, 172 (1957), was the first case to allude to an intent to prosecute as a necessary element of a lawful arrest. *Cornish* cited two cases for that proposition: *Baltimore & Ohio R.R. Co. v. Strube,* 111 Md. 119, 127, 73 A. 697, 700 (1909), and *Baltimore & Ohio R.R. Co. v. Cain,* 81 Md. 87, 31 A. 801 (1895). Neither *Strube* nor *Cain* mentions the intention to prosecute as a required element of an arrest. The authority for the proposition stated in *Cornish* appears to come from an uncited source: David Kauffman, *The Law of Arrest in Maryland,* 5 Md. L.Rev. 125 (1941). Without citing to a specific page, Kauffman interpreted *Cain* as stating that an "arrest is the detention of the offender for the purposes of prosecuting him for crime." *Id.* at 132. This proposition, and its recitation, are thus of questionable pedigree.

111 Md.App. 456, 467 n. 3, 681 A.2d 1190, 1196 n. 3 (1996); *Kennedy v. State*, 44 Md.App. 662, 667, 410 A.2d 1097, 1100 (1980), this Court has never *held* that a valid arrest in Maryland requires of the arresting officer an intent to prosecute the arrestee for the crime believed to have been committed. Despite *Bouldin*'s reference, in *dicta*, to an intent to prosecute within the Maryland common law definition of arrest, neither that case nor any other case decided by this Court has rested upon the determination that an intent to prosecute is a prerequisite to a valid arrest. Put simply, whether the officer intends that a detention lead to a prosecution has no bearing on whether an arrest has occurred.[14]

There is no question in these cases that Evans and Sykes–Bey were seized by the police prior to the search which uncovered the evidence that Respondents sought to suppress. Respondents argue, however, and the Court of Special Appeals agreed, that there was required on the part of the officers an intent to prosecute, which intent did not exist because the police did not intend to formally charge either Evans or Sykes–Bey until a date much later than the initial detention and search incident thereto. Neither Evans nor Sykes–Bey argues that the police wholly lacked the intent to prosecute; their argument is solely that the intent to prosecute had to be manifested contemporaneously with the initial seizure.

---

**14.** Moreover, police officers in Maryland ordinarily have no authority to prosecute. The power of prosecution lies instead within the offices of the Attorney–General, *see* MD. CONST. Art. V, § 3, the State's Attorneys, *see* MD. CONST. Art. V, § 9, and the State Prosecutor, *see* Maryland Code (1984, 1995 Repl.Vol., 1998 Supp.), §§ 9–1202 to 9–1207 of the State Government Article. In cases involving the statute of limitations for misdemeanor offenses, we have several times indicated that the commencement of a Maryland prosecution lies in activities outside the scope of police authority, either with the courts, in the issuance of an arrest warrant, *McMorris v. State*, 277 Md. 62, 67–68, 355 A.2d 438, 441–42 (1976), or with prosecutors, in the filing of a valid presentment of the case to a grand jury. *Archer v. State*, 145 Md. 128, 138, 125 A. 744, 748 (1924); *State v. Kiefer*, 90 Md. 165, 174–75, 44 A. 1043, 1044–45 (1899).

 We hold that for a lawful arrest in Maryland for the commission of a felony, a police officer must have probable cause to believe the suspect has committed a felony and must either physically restrain the suspect or otherwise subject the suspect to his or her custody and control. We reject Respondents' argument that failure of the police to initiate the formal criminal charging process at or near the time of the initial detention precludes a valid arrest under Maryland law. This State's law of arrest extends no talismanic significance to the act or intention of initiating the formal booking process. On the contrary, formally charging a suspect is not a *sine qua non* to a lawful arrest in Maryland.

In accordance with the undercover investigation procedures in these cases, the police members of the "identification teams," acting upon probable cause, both physically restrained Evans and Sykes–Bey *and* subjected each of them to their police custody and control. In the case of Evans, the police stopped him as a suspect and required him to produce identification. When he was unable to produce satisfactory identification, the police held Evans for a significant length of time until his father could adequately identify him. During that time period, the police searched and photographed Evans, while also filling out an identification form. Respondent Sykes–Bey was treated in similar fashion by the Baltimore City Police.

It is thus beyond question that the initial detentions of Respondents rose to the level of either a physical restraint or a subjugation to police custody and control. We therefore conclude that the initial detentions of Respondents by the police constituted arrests. Even if they were not *formally* arrested until much later, Evans and Sykes–Bey were nonetheless arrested on June 9, 1994 and February 16, 1994, respectively.[15] *See United States v. Hernandez*, 825 F.2d 846,

---

15. As indicated earlier, the trial court questioned Officer Dobbins during Evans's suppression hearing as to why she did not "complete the arrest" but instead let Evans go. In later announcing his ruling on the motion to suppress, the judge again spoke of the notion of an incomplete arrest: "[T]he fact that [the officers] elected not to process the arrest to completion doesn't change the fact that it was an arrest."

852 (5th Cir.1987) ("A custodial arrest based on probable cause is a reasonable intrusion under the fourth amendment whether the arrest is de facto or formal." (citing *Sibron v. New York*, 392 U.S. 40, 67, 88 S.Ct. 1889, 1905, 20 L.Ed.2d 917 (1968))).

## V.

### A.

■ In the present cases, the State justifies the seizure of evidence from Evans and Sykes–Bey as a permissible search incident to a lawful arrest. The United States Supreme Court has long recognized the authority of the police to search an arrestee incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 225–26, 94 S.Ct. 467, 472, 38 L.Ed.2d 427 (1973). The search incident to arrest doctrine is one of the established exceptions to the general principle that the search of a person by a state agent without a warrant is unreasonable under the Fourth Amendment, and therefore invalid. *See Illinois v. Rodriguez*, 497 U.S. 177, 185, 110 S.Ct. 2793, 2799–2800, 111 L.Ed.2d 148 (1990). As Judge Cardozo observed, writing for the Court of Appeals of New York:

> If immunity [to a warrantless search] is to be conceived of as a rule, there is one exception that has been established as firmly as the rule itself. The government may search the person of the accused when legally arrested to discover and seize the fruit or evidences of crime.

*People v. Chiagles*, 237 N.Y. 193, 142 N.E. 583, 583 (N.Y.1923) (internal quotation marks and citation omitted).

---

The trial court's reference to this notion, repeated interestingly enough by Evans on the second page of his brief to this Court, lends particular insight as to how Respondents' appeals ought to be resolved. The act of arrest is not some Platonic ideal whose existence can be recognized only upon its perfection. Rather, it is a simple concept more readily perceivable. Simply because the arrests of Evans and Sykes–Bey did not result in the initiation of charges upon their initial detention hardly means that arrests did not occur.

In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court synthesized the prior case law of that Court and held:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.... In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

*Id.* at 762–63, 89 S.Ct. at 2040. The Court's decision in *Chimel* left open the significant question of whether an arresting officer must have an objectively reasonable suspicion that an arrestee possesses either a weapon or evidence of a crime to sustain an unqualified search incident to an arrest. 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 5.2(a), at 65 (3d ed.1996). That question was resolved by the Court in *Robinson,* 414 U.S. 218, 94 S.Ct. 467.

In *Robinson,* the Supreme Court rejected the argument that the Fourth Amendment requires a case-by-case determination of whether it was reasonable for the police to suspect that an arrestee possessed a weapon or evidence of a crime at the time of the search incident to an arrest. *Id.* at 235, 94 S.Ct. at 477. The Court announced a bright-line rule, concluding:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, *a search incident to arrest requires no additional justification.* It is the fact of the lawful arrest which establishes the authority to search, and we hold that *in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amend-*

*ment, but is also a "reasonable" search under that Amendment.*

*Id.,* 94 S.Ct. at 477 (emphases added). *See Ricks v. State,* 322 Md. 183, 192, 586 A.2d 740, 744 (1991) ("Computation of the probability of harm to the arresting officer is not a relevant inquiry...."). It might thus be stated that the sole prerequisite for application of the "search incident to lawful arrest" exception is the existence of a lawful arrest. The Supreme Court itself has articulated no greater a standard: "The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) (citing *Robinson,* 414 U.S. at 235, 94 S.Ct. at 477). The question then becomes how the lawfulness of an arrest is to be determined.

It is well-established that when a warrantless arrest is made by a law enforcement official, acting pursuant to local or state authority, the validity of that arrest is determined by state law, absent any federal statute to the contrary. *Stanley v. State,* 230 Md. 188, 191, 186 A.2d 478, 480 (1962) (citing *United States v. Di Re,* 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948).) *See DeFillippo,* 443 U.S. at 36, 99 S.Ct. at 2631; *Miller v. United States,* 357 U.S. 301, 305, 78 S.Ct. 1190, 1193–94, 2 L.Ed.2d 1332 (1958); *Johnson v. United States,* 333 U.S. 10, 15, and n. 5, 68 S.Ct. 367, 370, and n. 5, 92 L.Ed. 436 (1948); *United States v. Mejias,* 552 F.2d 435, 444 (2nd Cir.1977); *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991) (*en banc* ). Consistent with the authority of a police officer to make a warrantless arrest for the commission of a felony based upon probable cause, Maryland law has long recognized the right of a police officer to make a full search of an arrestee incident to that arrest. *Gross v. State,* 235 Md. 429, 440, 201 A.2d 808, 814 (1964); *Edwardsen v. State,* 231 Md. 332, 337, 190 A.2d 84, 86 (1963); *Callahan v. State,* 163 Md. 298, 301, 162 A. 856, 857–58 (1932); *Lawrence v. State,* 103 Md. 17, 37, 63 A. 96, 104 (1906). In addition, we have consistently interpreted this principle of Maryland law to coincide with the permissible scope of a search incident to an arrest authorized by the Supreme Court in *Chimel,* 395 U.S.

at 763, 89 S.Ct. at 2040. *Ricks,* 322 Md. at 191, 586 A.2d at 744. *See also Stackhouse v. State,* 298 Md. 203, 208–09, 468 A.2d 333, 336 (1983). Finally, the scope of such a search extends both to weapons and to evidence or the instruments of crime. *See Mulcahy v. State,* 221 Md. 413, 422, 158 A.2d 80, 85 (1960).[16]

■■■ Applying these principles to the present cases, our earlier holding that the initial detentions of Respondents constituted lawful arrests under Maryland law should be dispositive of the search incident issue: given the existence of a valid arrest, the officers were constitutionally permitted under *Robinson* and its progeny, as well as our own precedent, to conduct full searches of Evans and Sykes–Bey. We are nonetheless cognizant that our conclusion that the police conducted valid arrests within Maryland of Evans and Sykes–Bey, while establishing an important, threshold prerequisite to the validity of the incidental searches, does not truly end the constitutional inquiry.

Despite the robust proclamations we earlier quoted from *Robinson* and *DeFillippo,* based upon the Supreme Court's recent decision in *Knowles v. Iowa,* —— U.S. ——, 119 S.Ct.

---

**16.** The right of the police to make an "unqualified" search of an arrestee's person incident to a lawful arrest is nevertheless limited in that "any such search must still be reasonable." *Swain v. Spinney,* 117 F.3d 1, 6 (1st Cir.1997); *United States v. Edwards,* 415 U.S. 800, 808 n. 9, 94 S.Ct. 1234, 1239 n. 9, 39 L.Ed.2d 771 (1974). *See* 3 Wayne R. LaFave, Search and Seizure § 5.3(c), at 130–31 (3d ed.1996). Before the Court of Special Appeals, Evans repeatedly emphasized, and has asserted again before this Court, that the search of his "rear area" by the police violated this constitutional guarantee of reasonableness. *See Schmerber v. California,* 384 U.S. 757, 767–71, 86 S.Ct. 1826, 1834–36, 16 L.Ed.2d 908 (1966) (warrantless blood test of suspect arrested for driving under influence of alcohol, administered by physician in hospital setting, ruled permissible under Fourth Amendment). *See also Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (use in court of evidence of contraband morphine capsules procured through stomach pumping of suspect by physician at direction of sheriff held to violate Due Process Clause). The intermediate appellate court concluded that the issue of the reasonableness of the search in Evans's case was not preserved for appellate review. *Evans v. State,* 113 Md.App. 347, 353–54 n. 6, 688 A.2d 28, 31 n. 6 (1997). We agree.

484, 142 L.Ed.2d 492 (1998), what suffices as an arrest under the law of this State may not incorporate the necessary justifications and requirements under the Fourth Amendment for a search incident to that arrest. Even so, we are satisfied that the necessary factors were present in Respondents' arrests.

In *Knowles,* the United States Supreme Court reviewed the drug convictions of a defendant who had been stopped by police for speeding, was issued a citation in lieu of an arrest under Iowa law, but whose car was then searched pursuant to an Iowa statute granting authority to conduct a full "search incident to a traffic citation." The Court reversed the Supreme Court of Iowa's decision affirming Knowles's convictions and its judgment upholding "the constitutionality of the search under a bright-line 'search incident to citation' exception to the Fourth Amendment's warrant requirement, reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest." *Id.* at ——, 119 S.Ct. at 487. Although the Supreme Court did not specifically rest its rejection of the "search incident to citation" on the lack of an arrest, it nonetheless was not persuaded by the Iowa Supreme Court's rationale that the existence of probable cause to arrest was sufficient foundation for the incidental search sanctioned by the statute. The heart of the Court's decision focused elsewhere.

Writing for a unanimous court, Justice Rehnquist reiterated "the two historical rationales for the 'search incident to arrest' exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Id.* at ——, 119 S.Ct. at 487 (citing *Robinson,* 414 U.S. at 234, 94 S.Ct. at 477).[17] The Court ruled

---

17. Whereas the Supreme Court has described the second justification for the search incident rule as "the need to preserve evidence for later use at trial," *Knowles v. Iowa,* —— U.S. ——, 119 S.Ct. 484, 487, 142 L.Ed.2d 492 (1998), and as "the need to discover and preserve evidence ... necessary to prosecute [the] offense," *id.* at ——, 119 S.Ct. at 488, it might be argued that a prerequisite to a constitutionally permissible

that "neither of these underlying rationales for the search incident to arrest exception is sufficient to justify" a search

search incident is the existence of an intent by the arresting officers to prosecute. If such be the case, the requirement was fulfilled in the present cases. At the suppression hearing in the Evans case, Officer Dobbins testified as follows:

THE COURT: [J]ust so the record's clear, why didn't you complete the arrest rather than let [Evans] go and arrest him later?

OFFICER DOBBINS: Because we—it was an operation we were working on and we had the individuals indicted.

THE COURT: But ... why'd you choose to indict them and arrest [them all] rather than arrest them one by one as you made the ... sales?

OFFICER DOBBINS: Because we wanted to do it in a mass sweep and keep it confidential until we did it all....

THE COURT: What was the benefit to the Department or to the City to arrest them all in a mass sweep rather than arrest them one by one as you made the sale?

OFFICER DOBBINS: Because we could get more cases. They wouldn't be expecting us as much.

Similar testimony was elicited at the suppression hearing of Sykes–Bey during the cross-examination of Officer Marucci:

THE COURT: [L]et me ask you this question then. You chose tactically not to arrest the customer, even though there was a sale, so that you wouldn't alert the dealers to the fact that there was police activity. Is that correct?

\* \* \* \* \* \*

OFFICER MARUCCI: The reason [was] to seize the drugs and the money [and] to come back later as an impact on that area and to make mass arrests.... If you were to arrest them one at a time, there would just be another person in their place to take over that same location. So, you would just be locking up one after one after one, instead of going in and making an impact and trying to clean out the area all at one time.

THE COURT: The goal was to develop probable cause for a large group of individuals, arrest them all on one day if you could get them all, and then however long it took after that to get the rest, and create a vacuum in the market. Is that what you're saying?

OFFICER MARUCCI: Yes.

The preceding testimony by Officers Dobbins and Marucci demonstrates that it was the intent of the Baltimore City Police, in conducting Operations Midway and Mid–East, eventually to initiate charges against Evans and Sykes–Bey for the crimes for which they were initially detained.

Finally, to the extent that an intent to prosecute is arguably required for incidental searches to be constitutionally valid, this does not necessitate that the Constitution imposes upon the arrest itself the same requirement, one that we have explicitly found *not* applicable to arrests in Maryland. *See supra* Part IV.

incident to a traffic citation. *Id.* at ——, 119 S.Ct. at 487. Because traffic stops involve relatively less danger and thus a less strong safety justification and because ordinary traffic stops lack any need to discover and preserve evidence, the State's application of the statutory provision for a "search incident to citation" was unconstitutional. *Id.* at —— – ——, 119 S.Ct. at 487–88.

While *Knowles* might easily be distinguished from the present cases by its lack of the crucial precipitating event for a search incident to lawful arrest, namely, an actual arrest as defined by state law, we find *Knowles* inapposite for another reason: unlike the citation of Knowles for speeding, the arrests of Evans and Sykes–Bey for drug trafficking incorporated both of the historical justifications for conducting a full search incident: the safety of the arresting officers as well as the need to discover and preserve evidence.

This Court and the Court of Special Appeals have often recognized the inherent danger of drug enforcement, such that an investigatory stop based upon a reasonable suspicion that a suspect is engaged in drug dealing "can furnish the dangerousness justifying a frisk" for weapons. *Simpler v. State,* 318 Md. 311, 318, 568 A.2d 22, 25 (1990). *See State v. Blackman,* 94 Md.App. 284, 299, 617 A.2d 619, 626 (1992); *Aguilar v. State,* 88 Md.App. 276, 283, 594 A.2d 1167, 1170–71 (1991). Myriad other courts have likewise held that the justification to conduct a weapons frisk of a person stopped for suspected involvement in drug trafficking can flow directly from the nature of the criminal activity itself. *See, e.g., United States v. Rivers,* 121 F.3d 1043, 1045 (7th Cir.1997); *United States v. Robinson,* 119 F.3d 663, 667 (8th Cir.1997); *United States v. McMurray,* 34 F.3d 1405, 1410 (8th Cir.1994); *United States v. Cruz,* 909 F.2d 422, 424 (11th Cir.1989); *United States v. Anderson,* 859 F.2d 1171, 1177 (3rd Cir.1988). Where the officers who arrested each Respondent had probable cause to believe the two were trafficking in drugs, we can neither dismiss nor diminish the safety concerns of those officers. While admittedly not transporting the arrestees to the station house, the officers were nonetheless engaged in more than a

routine investigatory stop. The arrest, identification, evidence procurement and recordation procedures for the undercover narcotics operations took some time to effect and consequently placed the officers at significant risk should they not have immediately and fully searched each arrested suspect. More generally, this Court has found the act of arrest itself to be fraught with danger for the police officers involved. Writing for a unanimous Court in *Ricks*, 322 Md. at 191–192, 586 A.2d at 744, then Chief Judge Murphy stated:

> [T]he safety of the arresting officers may always be in question when they are in the presence of an unrestrained arrestee. *See, e.g., United States v. Bennett*, 908 F.2d 189, 194 (7th Cir.1990) (police are not required to presume that an arrestee is wholly rational; persons under the stress of an arrest situation may attempt actions which are unlikely to succeed); *People v. Hufnagel*, 745 P.2d 242, 247 (Colo. 1987) ("Arrests are necessarily tense risky events when many things are happening at once."); *Com. v. Timko*, 491 Pa. 32, 417 A.2d 620, 622 (1980) (ever present risk in an arrest situation that an arrestee may seek to use a weapon or to conceal or destroy evidence).

In addition to officer safety, the threat to valuable evidence was a substantial concern in the instant cases. Even though Evans and Sykes–Bey may have perceived themselves as not having been arrested because they were not carted off to the police station, it is indisputable that had they simply been released after their identification was secured, the police would have lost valuable evidence of the crimes for which Respondents were arrested, i.e. the marked money and additional drugs. *See* 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 5.2(h), at 99 (3d ed. 1996) (A search based on the need to procure evidence "is no less lawful when incident to an arrest not of a 'custodial' nature."). The State's prosecution of Evans and Sykes–Bey for the crimes at issue, without recovery of the marked money and additional drugs, would certainly have been weakened significantly. Therefore, because of the officers' legitimate concerns both for their own safety and for the preservation of evidence, we hold that the searches

incident to Respondents' valid arrests satisfied the requirements of the Fourth Amendment and were constitutional.

## B.

Respondent Sykes–Bey relies on *dicta* in *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), to support his argument that the United States Supreme Court has foreclosed the constitutional validity of a search incident to an arrest when the detainee is not subject to the criminal charging process in a relatively contemporaneous manner. Although *dicta,* and thus not binding precedent, we do not believe that the cited passages translate to the broad meaning Sykes–Bey suggests and conclude that our application of Maryland law in upholding the search incident to the lawful arrest of Sykes–Bey does not offend the United States Constitution.

Sykes–Bey cites these two Supreme Court cases for the proposition that because a defendant is not "formally arrested" for one month after the disputed search, the search cannot be justified as incident to an arrest. The Respondent maintains that in both cases the Court specifically intimated that an "essentially contemporaneous" and "formal" arrest must occur for an officer to have authority to conduct a full search of the detainee.

The central issue addressed by the Supreme Court in *Rawlings,* 448 U.S. 98, 100 S.Ct. 2556, was whether the search that uncovered incriminating evidence upon Rawlings's person was unconstitutional. The Court noted that once Rawlings admitted ownership of drugs legally confiscated from another person nearby, the police possessed probable cause to arrest him. *Id.* at 111, 100 S.Ct. at 2564. The Court concluded that the fact that the search of Rawlings momentarily preceded his arrest did not taint the search:

Where the *formal* arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it

particularly important that the search preceded the arrest rather than vice versa.

*Id.*, 100 S.Ct. at 2564 (emphasis added).

Sykes–Bey extrapolates from this language the requirement that the Fourth Amendment demands that an arrest authorizing a search incident thereto must be a "formal arrest." Sykes–Bey further reasons that because the arrest in his case was not a "formal" one, by virtue of the fact that he was not subjected to the criminal charging process, it follows that the search incident to the initial detention in his case was therefore illegal. Sykes–Bey simply reads too much into the Supreme Court's choice of words in *Rawlings*. In that case, the Court was deciding the permissible *timing* of a search incident to an arrest, not the level of detention or official action necessary to constitute an arrest.

Although the Supreme Court has not squarely addressed this specific issue, we do not interpret the Court's use of the phrase "formal arrest" as a limitation on the authority to search incident to arrest. The Supreme Court has elsewhere appended a descriptive adjective to the term "arrest," using such phrases as "formal arrest" and "custodial arrest," without apparent significance in the context of cases like Respondents'. *See, e.g., Gustafson v. Florida*, 414 U.S. 260, 264, 94 S.Ct. 488, 491, 38 L.Ed.2d 456 (1973) ("custodial arrest") and *United States v. Robinson*, 414 U.S. 218, 221, 94 S.Ct. 467, 470, 38 L.Ed.2d 427 (1973) ("full custody arrest").[18] In our view, the use of the adjectives "formal" or "custodial" does not further modify the constitutional contours of a detention. Rather, there is another, logical explanation: such modifiers have been used by the Supreme Court and others simply to emphasize the distinction between arrests and non-arrests, not to delineate different types of arrest.[19]

---

**18.** Likewise, in the recent decision of *Knowles v. Iowa*, —— U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the Supreme Court again employed the terms "custodial arrest" and "formal arrest," *id.* at —— —— ——, 119 S.Ct. at 487–88, but in no way differently than in the cases cited above.

**19.** Indeed, in *Knowles v. Iowa*, —— U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the Supreme Court specifically contrasted the

Relative to the two 1973 cases, *Gustafson* and *Robinson*, we take note of the State's observation that these cases were decided in the era immediately following the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), with its introduction of a less stringent constitutional standard for the level of suspicion required for an investigatory stop and its concomitant less intrusive allowable search. We agree that the focus in these cases was to distinguish traditional arrests and searches incident thereto from the newfound *Terry* stop and frisk rather than to introduce yet another distinction in the reasonableness of searches and seizures.

■ Accordingly, we find no constitutional distinction between an arrest and a "formal" or "custodial" arrest. When employed in the context of the Fourth Amendment analysis of Sykes–Bey's argument in this case, the adjectives "formal" or "custodial" are redundant and unnecessary for the purpose of defining an arrest. *See Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983) ("An arrested person is not invariably taken to a police station or confined; if an arrestee is taken to the police station, *that is no more than a continuation of the custody inherent in the arrest status.*" (emphasis added)); *People v. Bland*, 884 P.2d 312, 325 (Colo.1994) (Rovira, C.J., concurring) ("A custodial arrest occurs regardless of whether a person is eventually brought to the station. All arrests are inherently custodial.").

We note that at least one federal court has considered and rejected the argument made by Sykes–Bey based upon *Rawlings*. We concur with the reasoning of the United States Court of Appeals for the Fifth Circuit and find it persuasive on this issue:

> [Appellant] observes that the *Rawlings* Court employed the phrase *formal arrest* and contends that only a formal arrest

---

nature of a "custodial arrest" or "formal arrest" with that of a traffic stop or *Terry* stop. *Id.* at —— ——, 119 S.Ct. at 487–488. *See also Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984).

may justify an immediately preceding incidental search. We doubt that the *Rawlings* principle is so limited. This particular in the statement of the principle undoubtedly reflects the fact that the arrest following the search in that case was a formal arrest.

*United States v. Hernandez,* 825 F.2d 846, 852 (5th Cir.1987) (citations omitted).

Sykes–Bey also relies upon *Murphy,* 412 U.S. 291, 93 S.Ct. 2000, to assail the search in his case. In that case, the Supreme Court dealt with the constitutionality of a search for evanescent evidence before the police actually arrested the defendant, but where the police had probable cause to believe that the defendant had committed a crime. In upholding the search, the Court observed:

> *Where there is no formal arrest,* as in the case before us, a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence on his person.... [W]e do not hold that a full *Chimel* search would have been justified in this case *without a formal arrest* and without a warrant. But the respondent was not subjected to such a search.

*Id.* at 296, 93 S.Ct. at 2004 (emphases added).

Similar to his argument based upon the language of *Rawlings,* Sykes–Bey quotes the preceding passage in support of the argument that a full search incident to an arrest requires a "formal arrest," that is, a detention where the defendant is taken to the police station for booking or undergoes other analogous formal processing. We find this argument unavailing for the same reasons we rejected Sykes–Bey's argument based upon the language of *Rawlings.*

More importantly, the fatal flaw in Sykes–Bey's invocation of *Murphy* is that the case did not deal with the prerequisites of a valid arrest for purposes of the Fourth Amendment. On the contrary, the Supreme Court's decision was premised upon the fact that under Oregon law, Murphy was not arrested. *Id.* at 294, 93 S.Ct. at 2003 ("It is ... undisputed that the police did not ... formally 'arrest' the respondent, as that term is

understood under Oregon law."). Because we have already determined that upon his initial detention Sykes–Bey was arrested, "formally" or not, *Murphy* is inapposite. Consequently, while again acknowledging the *possibility* that a state law definition of arrest may not comport with the expectations and requirements of the Fourth Amendment of the federal Constitution vis-a-vis a search incident to arrest, we do not believe the decisions by the United States Supreme Court in *Rawlings* and *Murphy* foreclose our holding today.

On a final note, we agree with the observation of Judge Sonner in his dissent below that adopting the requirement of formal processing of detained suspects as a constitutional prerequisite to a valid arrest would not be in concert with the principles espoused by the Fourth Amendment:

> Requiring the police to charge every person they detain and search forwards no valid public interest, much less any of the values that the Fourth Amendment's exclusionary rule is meant to protect. The violations of privacy or detention and search will already have occurred.... The Fourth Amendment protection against illegal searches and seizures and the privacy interest that the exclusionary rule is believed by some to protect will not, in any way, be serviced by attaching a further requirement that the police lodge a formal charge after they have searched.

*Evans v. State*, 113 Md.App. 347, 378, 688 A.2d 28, 44 (1997) (Sonner, J., dissenting).

Writing for the Supreme Court, Justice Marshall reached a similar conclusion in resolving an analogous issue:

> From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. These costs are by no means insubstantial since ... a formal accusation may interfere with the defendant's liberty, ... disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and

create anxiety in him, his family and his friends. From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable.... And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts.

*United States v. Lovasco,* 431 U.S. 783, 791–92, 97 S.Ct. 2044, 2049–50, 52 L.Ed.2d 752 (1977) (footnotes, internal quotation marks and citation omitted).

We further agree with Justice Marshall that such a requirement of an immediate prosecution might pressure the police and "prosecutors into resolving doubtful cases in favor of early—and possibly unwarranted—prosecutions." *Id.* at 793, 97 S.Ct. at 2050. It would be ironic indeed were compliance with the guarantee of the Fourth Amendment, of the citizens' right to be free from unreasonable searches and seizures, to mandate that police officers subject detainees to a *greater* intrusion, a "formal" arrest, in order to justify the lesser intrusion of a search. The force of the Court of Special Appeals' decision in *Evans* is that Respondents' constitutional rights were violated only when the police decided not to "arrest" them, and let them go. In this regard, we agree with the intermediate appeals court of Massachusetts:

Under that principle, it cannot be said that [the defendant's] constitutional rights were violated when he was first searched; if he had been arrested immediately afterwards ..., no question could now arise as to the constitutional validity of the search. It is thus apparent that the defendant is contending for a nonsense proposition: that his constitutional rights were violated at the moment when the police decided not to arrest him and instead let him go.

*Commonwealth v. Skea,* 18 Mass.App.Ct. 685, 470 N.E.2d 385, 393 (Mass.Ct.App.1984) (holding that while search incident to arrest could not justify search in that case, probable cause plus exigency justified search).

Accordingly, we hold that the failure of the Baltimore City Police to subject Evans and Sykes–Bey to the formal criminal charging process at the time of their valid arrests under Maryland law did not offend the United States Constitution. Having validly effected arrests under Maryland law, the officers properly conducted a search incident to the arrests of Evans and Sykes–Bey. The circuit court therefore properly denied Respondents' motions to suppress.

*JUDGMENTS OF THE COURT OF SPECIAL APPEALS REVERSED. CASE OF RESPONDENT EVANS REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT EVANS. CASE OF RESPONDENT SYKES–BEY REMANDED TO THE COURT OF SPECIAL APPEALS FOR CONSIDERATION OF THE ISSUE OF PROBABLE CAUSE; COSTS IN THIS COURT TO BE PAID BY RESPONDENT SYKES–BEY AND IN THE COURT OF SPECIAL APPEALS TO ABIDE BY THAT RESULT.*