744 A.2d 1062

**James BOSTON**

v.

**BALTIMORE COUNTY POLICE DEPARTMENT.**

**No. 75, Sept. Term, 1999**

Court of Appeals of Maryland.

Feb. 8, 2000.

**394**

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for petitioner.

John E. Beverungen, Asst. County Atty. (Virginia W. Barnhart,County Atty., and Jeffrey G. Cook, Asst. County Atty., on brief), Towson, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

The issue before us is the proper construction and application of Maryland Code, Article 27, § 594B(m)(1) and (2) which deals with the authority of local police officers to "make arrests, conduct investigations and otherwise enforce the laws of this State throughout the State." The issue arises in the context of a police disciplinary proceeding. Baltimore County police officer, James Boston, petitioner here, was found by an administrative hearing board to have violated an express exception to that extra-territorial authority by seeking to enforce the State motor vehicle laws in Baltimore City, for which he lost five days of leave. That decision, confirmed by the county police chief, was affirmed by the Circuit Court for Baltimore County and then by the Court of Special Appeals. We also shall affirm.

## THE STATUTE

Under Maryland common law, a local police officer had no authority to act officially, at least for the purpose of making an arrest, outside the boundaries of the political subdivision by which the officer was employed. In *Stevenson v. State,* 287 Md. 504, 509–10, 413 A.2d 1340, 1343–44 (1980), we concluded:

"Generally, a peace officer's authority to make an arrest is limited, in the absence of statutory authority expanding it, to the confines of the geographical unit of which he is an officer (citations omitted). At common law, a limited exception to this rule developed which permits an officer who is in 'fresh pursuit' of a suspected felon to make a legally binding arrest in a territorial jurisdiction other than the one in which he has been appointed to act.... In all other situations, however, a peace officer who makes an arrest while in another jurisdiction does so as a private person, and may only act beyond his bailiwick to the extent that the law of the place of arrest authorizes such individuals to do so."

In 1989, as part of the Drug Kingpin Act (1989 Md. Laws, ch. 287), local law enforcement officers were authorized to enforce the controlled dangerous substance laws throughout

the State, to the same extent as a police employee of the Maryland State Police, but only in accordance with regulations adopted by the Superintendent of the Maryland State Police. *See* Article 27, § 298(f).[1] The law provided, among other things, that, when an officer exercised extra-territorial authority, notice had to be given to the police chief, or counterpart, of the outside jurisdiction.

In 1993, the General Assembly expanded the extra-territorial authority of local police officers by enacting new § 594B(*l*)—currently § 594B(m)—to Article 27. In its initial form, the authority granted was exercisable only in certain enumerated circumstances and was subject to certain conditions, including the same kind of notice requirements that were mandated under the Drug Kingpin Law, but there was no limitation with respect to the types of offenses that officers could investigate or types of criminal laws that officers could enforce out of their home jurisdiction. During the legislative process, however, the bill was amended in a number of respects. The amendment most relevant here was the one stating that "[u]nder this subsection a police officer may not enforce the provisions of the Maryland Vehicle Law beyond the officer's sworn jurisdiction." As enacted, and as it now exists, therefore, the statute provides, in relevant part:

"(2)(i) Except as provided in subparagraph (ii) of this paragraph and subject to the limitations provided in paragraph (3) of this subsection, and in addition to the powers granted in § 298 of this article [the authority to enforce the drug laws], a police officer of this State may make arrests, conduct investigations and otherwise enforce the laws of this State throughout the State without limitations as to jurisdiction.

(ii) Under this subsection a police officer may not enforce the provisions of the Maryland Vehicle Law beyond the officer's sworn jurisdiction.

---

**1.** We have been unable to locate any regulations adopted by the State Police pursuant to § 298(f).

(3) A police officer may exercise the powers granted in this subsection if:

(i) 1. The police officer is participating in a joint investigation with officials from any other State, federal, or local law enforcement agency at least one of which shall have local jurisdiction;

2. The police officer is rendering assistance to a police officer;

3. The police officer is acting at the request of a local police officer or a State Police officer; or

4. An emergency exists; and

(ii) The police officer is acting in accordance with regulations adopted by the police officer's employing agency to implement this subsection."

The statute, § 594B(m)(1)(ii), defines "emergency," for purposes of subsection (m)(3)(i)(4) as "a sudden or unexpected happening or an unforeseen combination of circumstances that calls for immediate action to protect the health, safety, welfare, or property of an individual from actual or threatened harm or from an unlawful act."

The exception, withdrawing the power to enforce the State Motor Vehicle laws outside the officer's home jurisdiction from the extra-territorial authority otherwise conferred, was deliberate. It was added by the House of Delegates to the Senate bill, and, when the Senate initially declined to accept the amendment, the House refused to recede; the amendment was finally accepted by the Senate as the result of a House–Senate conference recommendation. *See* 1993 Senate Journal at 3052–3055. Four years later, an effort was made to override that exception. The bill, House Bill 276 (1997), began as an effort to permit local police officers generally to arrest and detain a person outside the officer's home jurisdiction "for a reasonable amount of time for the purpose of transferring the person to the custody of a local law enforcement agency." Viewing the bill as authorizing local police officers to "pursue and arrest, outside of the officer's local jurisdiction, [for] all offenses [,] both criminal and traffic," the Maryland Chiefs of

Police Association opposed it, noting that the extended authority posed a "safety issue" for the pursuing officer. Specifically, the police chiefs informed the Legislature:

"When the officer is outside his jurisdiction, he may also be outside of his department's radio coverage, as well. If this were to occur, the officer would be without the ability to communicate with other officers where the pursuit was occurring. Therefore, the out-of-jurisdiction officer would be without 'backup' during the incident."

Faced with this opposition, the sponsors amended the bill to limit the authority to detain and arrest, other than as permitted under § 298, to persons suspected of committing a traffic violation under the Maryland Vehicle Law. Even that effort failed, however. Notwithstanding the impassioned testimony of one of its sponsors, decrying the fact that "even though the officer may view a vehicle weaving from lane to lane, clearly not under the control of the individual, [the officer is not] able to pull that vehicle over to the side of the road," the bill was given an unfavorable report by the House Judiciary Committee and never reached the floor. Clearly, the Legislative will was, and is, that local police officers may not exercise the extra-territorial authority granted by § 594B(m) to enforce the Motor Vehicle Laws outside of their home jurisdiction.

### THE FACTS

With some contextual additions taken from Officer Boston's written reports and testimony, we shall recite the relevant facts essentially as found by the administrative hearing board. Boston does not contend that those findings were unsupported by substantial evidence. At approximately 2:00 on the morning of February 25, 1995, Officer Boston was driving his marked Baltimore County police car in the southwest area of Baltimore City, while en route from one call in the county to another. He was using the city streets as a shortcut, which is permissible. As he approached the convergence of Southwestern Boulevard and Wilkens Avenue, which is about a half-mile inside the city, a car came through a red light, nearly collided

with Boston, made a sharp left turn, and proceeded east on Wilkens Avenue, initially swaying back and forth. Believing that the driver might be intoxicated, Boston turned on his flashing lights and pursued the vehicle for the purpose of making a traffic stop.[2] He reported to his dispatcher that he attempted to stop the vehicle at Wilkens Avenue and Pine Heights Road, that the vehicle failed to stop, and that Boston "subsequently drove his [vehicle] within several feet of the suspect vehicle and activated his siren and shined his spotlight inside the suspect vehicle to gain [the driver's] attention." Although there were no further erratic or evasive moves by the car, it did not stop, but continued traveling further into the City at a speed of 30 to 40 miles an hour. In his testimony, Officer Boston noted that the car slowed down at the various stop signs along the way and was not being driven in an unsafe manner.

Officer Boston kept in communication with the dispatcher and asked that the City police be notified. He continued to

---

2. Officer Boston stated in his Motor Vehicle Pursuit Report that "[a] traffic stop was initiated at Wilkens Ave. and Pine Heights Ave." Under the heading "Reason For The Original Pursuit," he checked the box stating "Initiating Officer Intended To Make A Stop For A Witnessed Vehicle Code Violation." Sergeant John Schneider, who conversed with Boston over the radio during the event, testified that he heard Boston say that "he was gonna try to make a traffic stop for a vehicle." Lieutenant Meeks also concluded from the conversation that Officer Boston was attempting to make a traffic stop. In his testimony before the hearing board, when asked whether he intended to stop the car or just stay with it until the City police arrived, Boston denied that there was a pursuit and stated "I would hope that he would have been stopped. I got behind him to get the tag number of the car, and the description of the car, and gave information out what I knew and what had happened." Both Sergeant Schneider and Lieutenant Meeks distinguished an attempted stop from a pursuit. The Baltimore County Police Field Manual, § 9–5.0 defines a motor vehicle pursuit as "an active attempt by a law enforcement officer using a police vehicle to apprehend/identify the occupants of another vehicle *whose driver is aware of the attempt* and is resisting apprehension by ignoring the signals to stop [or] attempts to elude [the officer]." (Emphasis added). The two supervising officers were not certain, and indeed asked Boston, whether the driver was aware of his presence. Presumably, that is why Boston was asked whether his siren had been activated. The hearing board found that there was both an attempted stop and a pursuit.

pursue the car through the City, noting in the Motor Vehicle Pursuit Report that he later completed, that he was "unsure of exactly what streets were utilized." Although Boston immediately activated his overhead flashing lights, he did not turn on his siren until Lieutenant Meeks, over the radio, asked whether the siren was on. The siren was then sounded intermittently. At some point, City police cars joined the chase, one of them nearly colliding with Officer Boston's car, and, at that point, the pursued car increased its speed, reaching, in the opinion of one City officer, 50 to 60 miles an hour. For some period, the City police cars remained behind Boston, who slowed down at intersections and allowed the chased vehicle to gain a three to four block advantage. Boston eventually ended his pursuit and left the matter to the City officers. Almost immediately thereafter, the car went through a stop sign and collided with a taxicab, killing the passenger. The driver was later found to have both cocaine and over the legal limit of alcohol in his blood. The accident occurred about 3½ miles inside the City. The pursuit by Boston lasted over five minutes, according to the tape of the radio conversation.

That tape, recording the radio conversation Boston had with the dispatcher, with Sergeant John Schneider, and with Lieutenant Kathleen Meeks, was placed into evidence, along with testimony from Schneider and Meeks. Boston clearly reported that he was in the City and did ask the dispatcher to notify the City police department of what was occurring. Precisely what Boston was doing, or intended to do, however, is less than clear. At one point, Lieutenant Meeks asked if Boston was "in pursuit" of the vehicle, to which he replied "I don't know. I mean they're not stopping." Unable to hear a siren, Lieutenant Meeks asked if Boston was using his siren, and, at that point, Boston activated the siren. Sergeant Schneider testified that "there was no specific advisement of a pursuit by Officer Boston ... for some time," and he was not sure when the pursuit commenced. He assumed, for the first 30 to 40 seconds, that Boston was simply attempting to make a traffic stop and that there was no pursuit. Both officers expressed skepticism as to the speed Boston said he was going.

In defense, Officer Boston presented the testimony of another Baltimore County Officer and the affidavits of police officers from Baltimore City, Anne Arundel County, and Harford County, all attesting that it was appropriate for a police officer to take some action when observing a suspected intoxicated driver outside the officer's home jurisdiction. The City officer asserted, in relevant part, that "[a]lthough Maryland law prohibits law enforcement officers from enforcing motor vehicle laws outside their jurisdiction, a law enforcement officer must take action to neutralize the risk to life presented by a suspected impaired driver" and that, in that situation, it was appropriate for an officer "to use his lights and siren in following the driver, to either stop the driver or warn other motorists of potential dangers." The Anne Arundel County officer opined that the appropriate course was for the officer to pull over and detain the driver until the arrival of local officers and that such action "does not constitute enforcing the law." The Harford County officer agreed that stopping and detaining a suspected impaired driver "does not, at that point, constitute enforcing the law." The Baltimore County officer simply recounted that he had made extra-territorial stops on four occasions.

On this evidence, the hearing board concluded that "[t]he running of a traffic signal is a traffic violation under the eyes of the law," that "Officer Boston had no legal power to initiate a traffic stop on the vehicle," and "therefore he also had no enforcement powers under the law." A majority of the board determined that Boston should simply have "followed the vehicle and radioed for a Baltimore City unit to stop the vehicle and issue any citations that were justified." Because the evidence showed that Officer Boston had been warned twice in the past about improperly exercising extra-territorial jurisdiction—both times in Baltimore City—the sanction of loss of five days leave was imposed.

## DISCUSSION

Officer Boston contends generally that, notwithstanding § 594B(m)(2)(ii), a local police officer is authorized "to effect

an extrajurisdictional stop of a suspected impaired driver until local police arrive to enforce the law." Subordinately, he argues that (1) potentially life-threatening driving behavior was not intended to be encompassed within the exclusion relating to the enforcement of the motor vehicle laws, (2) stopping a driver for safety purposes does not constitute "enforcing" the law within the meaning of § 594B(m), (3) the department's position would lead to absurd consequences not intended by the Legislature, (4) a police officer is authorized to respond to an "emergency" "while in an extra-jurisdictional capacity," and (5) in the alternative, a police officer in an extrajurisdictional capacity retains "the common law right of private citizens to arrest without a warrant." Most of these subordinate arguments, as expounded in Boston's brief, overlap. The last was not raised in the circuit court and is therefore not preserved for appellate review, and none of them have merit.

The thrust of Boston's argument is that the purpose of the extra-territorial authority granted by § 594B(m) is to promote public safety and, given that purpose, the Legislature could not possibly have intended to preclude a police officer from stopping suspected drunk drivers outside of the officer's home jurisdiction. The subordinate arguments are woven into that theme. They all rest, however, either on a misreading of the statute or on a "spin" on the facts not accepted by the hearing board.

We have set forth the text of § 594B(m) and its pertinent legislative history because they demonstrate quite clearly that the extra-territorial authority of local police officers afforded by that statute was intended to be a very limited one. None of that authority may be exercised except in accordance with § 594B(m)(3), and that alone dooms Boston's case. Apart from the specific prohibition against extra-territorial enforcement of the motor vehicle laws, none of the authority under § 594B(m) may be exercised unless (1) the officer is participating in a joint investigation with other law enforcement agencies, at least one of which has local jurisdiction, the officer is rendering assistance to another police officer, the officer is

acting at the request of another State or local police officer, or an emergency exists, *and* (2) the officer is acting in accordance with regulations adopted by his or her employing agency.

■ None of those conditions were shown to exist in this case. Boston was not participating in a joint investigation; he was not rendering assistance to or acting at the request of another officer; and there was no emergency, as that term is defined in § 594B(m)(1). When Officer Boston commenced his pursuit, all he knew was that the driver had run a red light, nearly collided with him, and, after making a sharp left turn, briefly swayed. That conduct certainly constituted one or more vehicle code violations, for which citations could legitimately have been issued by an officer authorized to issue them in Baltimore City. It justified a stop, by an officer authorized to make a stop, to investigate the possibility of impairment. Once on Wilkens Avenue, however, until pursued by a posse of police cars, the driver drove safely at a moderate speed, considering that it was 2:00 in the morning and, according to the evidence, there was very little traffic; he slowed down at intersections; and he was not driving evasively or erratically.

Those circumstances do not require a finding, as a matter of law, that there was "a sudden or unexpected happening or an unforeseen combination of circumstances that calls for immediate action to protect the health, safety, welfare, or property of an individual from actual or threatened harm or from an unlawful act" sufficient to justify a full pursuit by Officer Boston through unfamiliar city streets. Nor was Officer Boston acting in accordance with any Baltimore County Police Department regulation. Indeed, he appears to have been acting in contravention of two of them. Section 13–4.1 of the county police department Field Manual, which deals with extrajurisdictional authority, states clearly, as a prohibition against the exercise of such authority, "[e]nforcing the provisions of the Maryland Vehicle Law." Section 9–5.2, moreover, requires an officer to abandon a motor vehicle pursuit when

the pursuit "is for traffic violations or other misdemeanors and the pursued vehicle fails to stop within a reasonable distance."

As we have explained, the General Assembly gave careful consideration, on at least two occasions, to the argument made by Officer Boston—that local police officers ought to be able to enforce the vehicle laws outside their home jurisdiction, at least to the extent of being able to stop a suspected impaired driver—and rejected it both times. The opposition of the Maryland Chiefs of Police Association and its concern over officer safety issues may well have been a factor in that rejection. Given the clear and long-standing common law prohibition against the exercise of extra-territorial jurisdiction and the administrative and logistical difficulties that can arise when officers attempt to exercise police powers in other jurisdictions, with which they may not be familiar, the Legislature made the policy choice to place limits and conditions on a relaxation of the common law rule. Some of those difficulties, indeed, were manifest in this case. Officer Boston was not familiar with some of the streets he was traveling and was not able to give his superiors a clear picture of what was occurring. Sergeant Schneider attempted to find Officer Boston but was unable to do so. Boston had no direct radio contact with the City police and almost got into a collision with one of its cars.

 Officer Boston views the authority to act in an "emergency," provided for in § 594B(m)(3)(i)(4) as an exception to the prohibition against enforcing the motor vehicle laws outside an officer's home jurisdiction. Apart from the fact that the circumstances did not suffice to require the finding of an emergency, that is not how the statute reads. The prohibition against enforcing the motor vehicle laws is free-standing and subject to no exceptions. Under no circumstance may an officer exercise the authority granted in § 594B(m) to enforce the motor vehicle laws outside of his or her home jurisdiction. The emergency provision in § 594B(m)(3), along with the other three circumstances listed in that paragraph, are not exceptions to the prohibition against enforcing the motor

vehicle laws, thereby allowing enforcement of those laws in those situations, but rather define the circumstances in which the extra-territorial authority to enforce laws other than motor vehicle laws may be exercised. Those four circumstances, in other words, are not expansions of the extra-territorial authority, but limitations on it. That is abundantly clear from both the plain language of the statute and from its legislative history.

■ We turn, then, to the argument that Officer Boston was not really enforcing the motor vehicle laws. That is simply not the case. In his own written report of the incident, Boston stated clearly that his intent was to stop and detain the driver, both by reason of the traffic violations he observed and on suspicion that the driver might be impaired. Apart from the evidence, and the hearing board's finding, that Officer Boston was involved in an actual pursuit and not just an attempted stop, such a stop and detention alone would constitute a seizure for Fourth Amendment purposes, *see Ferris v. State,* 355 Md. 356, 369, 735 A.2d 491, 498 (1999), and, to the extent that it would entail a physical restraint of the driver or his subjugation to police control, would also constitute an arrest under Maryland common law. *See State v. Evans,* 352 Md. 496, 515, 723 A.2d 423, 432 (1999). Unquestionably, Boston's pursuit of the driver in an attempt to effect such a stop and detention represented an enforcement of the State motor vehicle laws. There was no other conceivable basis for the attempted stop.

■ Boston's final argument is that his conduct was justified as a "citizen's arrest"—that he had the common law right that any citizen has to effect an arrest when observing the commission of a misdemeanor that amounts to a breach of the peace. Noting that that issue had not been raised in or decided by the circuit court, the Court of Special Appeals concluded that it was not preserved for appellate review and declined to address it. Boston nonetheless raised the issue in his petition for *certiorari.* Apart from non-preservation, the fact is that Boston was not acting, or purporting to act, in the

capacity of a private citizen. He was a police officer on active duty, driving a marked police car with overhead lights flashing and siren intermittently blaring. He remained in official contact with his dispatcher and was attempting, as a police officer, to stop and detain the driver. Quite apart from whether any stop, had it been effected, could have been justified under the law of arrest as a citizen's arrest, the effort to make the stop constituted the extra-territorial enforcement of the motor vehicle laws by a police officer, which Baltimore County police regulations, in conformance with State law, forbid.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.