Dear Honorable Doyle Niemann
You have requested our opinion whether five municipal corporations in Prince George's County may enter into a mutual aid agreement, under which their respective police departments will jointly conduct sobriety checkpoints within those municipalities. The sobriety checkpoints would be designed to enforce provisions of the Maryland Vehicle Law that prohibit driving while under the influence of alcohol or while impaired by alcohol or drugs. You asked that we evaluate the legality of the mutual aid agreement in light of a statutory provision that limits a police officer's authority to enforce the Maryland Vehicle Law outside the officer's own jurisdiction.
In our opinion, a mutual aid agreement may authorize police officers from several municipalities to jointly conduct a sobriety checkpoint within a participating municipality.
 I Background
You have provided a draft mutual aid agreement among the City of Hyattsville, the City of Mt. Rainier, the Town of Bladensburg, the Town of Riverdale Park, and the City of Greenbelt. The preamble of the draft agreement recites that each municipality has found sobriety checkpoints to be useful in protecting the health and safety of its residents, but that the towns have been hindered by resource and staff limitations in making full use of that enforcement technique.[1] The preamble references Annotated Code of Maryland, Criminal Procedure Article ("CP"), § 2-105, as the authority for the agreement.
The draft agreement states that each of the signatory municipalities has determined that "an emergency situation exists that justifies the need for immediate support from the other signatory municipalities. . . ." Draft Agreement, § I. It provides that sobriety checkpoints are to be planned, located, and operated in accordance with State and federal law and with procedures established by the municipal police chiefs; the police department in each municipality is authorized to provide officers and equipment to assist in the operation of a checkpoint established under the agreement. Draft Agreement, § II.
The draft agreement authorizes officers acting under the agreement to make arrests and exercise related police powers in the jurisdiction where the sobriety checkpoint is located. Draft Agreement, § III. It also sets forth procedures for an officer to follow after an arrest is made, and provides that any follow-up investigation is to be conducted by the jurisdiction in which the checkpoint is located. Id.
The agreement is to last for one year, unless extended. A municipality may terminate its participation on 30 days notice. Draft Agreement, § IV.
Finally, the draft agreement includes provisions concerning official immunities and the allocation of liability. Citing CP § 2-105, it provides that the signatory municipalities agree to waive claims against each another related to the agreement, to indemnify and hold each other harmless with respect to claims by third parties, and to forego claims against each other for expenditures, unless otherwise agreed before the establishment of a security checkpoint. Draft Agreement, § V. The draft agreement further affirms that police officers and other employees acting under the agreement remain employees of their respective jurisdictions and retain immunities and other benefits related to that employment while acting under the agreement. Id.
 II Analysis
A. Extraterritorial Authority of Municipal Police Officer
At common law, a municipal police officer's authority generally did not extend beyond the geographical limits of the jurisdiction in which the officer was employed. See Boston v. Baltimore County Police Dep't,357 Md. 393, 395, 744 A.2d 1062 (2000); see also 89 Opinions of the Attorney General 66, 70 (2004). However, there were exceptions to this general rule. For example, under the common law, an officer could make an arrest outside his or her jurisdiction if the officer was in "fresh pursuit" of a suspect. Stevenson v. State, 287 Md. 504, 509-10,413 A.2d 1340 (1980). A police officer's authority to engage in "fresh pursuit" has been codified in statute. CP § 2-301.
The General Assembly has also expanded the extra-territorial authority of law enforcement officers in other respects. In particular, under CP § 2-102 CRIM PROC., a municipal police officer may exercise law enforcement authority in another jurisdiction: (1) as part of a joint investigation with other law enforcement agencies, as long as one of the participating agencies has local jurisdiction; (2) when rendering assistance to another police officer; (3) when acting at the request of another police officer; and (4) in an emergency. CP § 2 — 102(b)(3)(i).[2] In each of those circumstances, the officer must act in accordance with regulations adopted by the officer's department. CP § 2-102(b)(3)(ii). However, this authority is subject to a key limitation. It does not extend to enforcement of the Maryland Vehicle Law outside the officer's own jurisdiction. CP § 2-102(b)(2); see Boston v. Baltimore County Police Dep't, 357 Md. at 404; 89 Opinions of the Attorney General at 71-72.[3]
Pertinent to your inquiry, a municipal police officer may also exercise extra-territorial authority under a mutual aid agreement. CP § 2-105.[4]
B. Mutual Aid Agreements
CP § 2-105 provides that "the governing body of a . . . municipal corporation may determine the circumstances under which the police officers . . . of the . . . municipal corporation, together with all necessary equipment, may lawfully go or be sent beyond the boundaries of the . . . municipal corporation to any place within or outside the State." CP § 2-105(b).[5] Further, the governing body may enter into a reciprocal agreement with another local government "for the period that it considers advisable" and may "establish and carry out a plan to provide mutual aid by providing its police officers . . . together with all necessary equipment. . . ." CP § 2-105(e)(1).[6]
The statute requires that a mutual aid agreement contain certain provisions concerning liability and indemnification related to the extra-territorial activities of the parties under the agreement. In particular, the parties must agree to waive any claims against each other. CP § 2-105(e)(2)(i). Also, the parties must agree to indemnify and hold each other harmless from all third party claims for property damage or personal injury. CP § 2-105(e)(2)(ii). The statute authorizes local governments to obtain necessary public liability insurance for extra-territorial activities that arise out of mutual aid agreements. CP § 2-105(f). The statute grants both the municipality and the officers who act outside their own municipality the same immunity from liability that they possess for actions undertaken by the officers within the municipality. CP § 2-105(c)(2) and (3).
The statute contains no limitations with respect to enforcement of the Maryland Vehicle Law. Nor does it explicitly indicate how the authority conferred by a mutual aid agreement may relate to the extra-territorial authority granted — and circumscribed with respect to the Maryland Vehicle Law — in CP § 2-102.
C. Enforcement of Maryland Vehicle Law under a Mutual Aid Agreement
The draft mutual aid agreement that you have provided would authorize municipal police officers to act outside their respective jurisdictions to establish sobriety checkpoints. A sobriety checkpoint is designed to detect and deter drivers who are driving under the influence of alcohol or while impaired by drugs or alcohol, in violation of the Maryland Vehicle Law. See Annotated Code of Maryland, Transportation Article, § 21-902. This scenario thus raises the question whether the limitation in CP § 2-102(b) on the extra-territorial enforcement of the Maryland Vehicle Law applies to officers acting under a mutual aid agreement authorized by CP § 2-105.
Principles of statutory construction direct us first to the language of the respective statutes. See, e.g., Facon v. State, 375 Md. 435, 445,825 A.2d 1096 (2003). Specific language in one section, and the absence of language in the other, suggests that the limitation on enforcement of the Maryland Vehicle Law does not pertain to officers acting under mutual aid agreements. First, the limiting provision of CP § 2-102
states:
 This section does not authorize a police officer who acts under the authority granted by this section to enforce the Maryland Vehicle Law beyond the police officer's sworn jurisdiction.
CP § 2-102(b)(2) (emphasis supplied). This restriction thus specifically qualifies the officer's enforcement authority under "this section" — i.e., CP § 2-102; on its face it does not purport to limit the officer's extra-territorial authority under the common law or under other statutes such as CP § 2-105. See Seip v. State,153 Md. App. 83, 90, 835 A.2d 187 (2003) (limitation in CP § 2-102(b)(2) does not apply to arrest made pursuant to "fresh pursuit" authority under common law or its codification in CP § 2-301). Indeed, the statute states that it "does not impair a right of arrest otherwise existing under the Code." CP § 2-102(e)(1).
Second, in authorizing the use of mutual aid agreements to pool local police resources, CP § 2-105 places no restrictions with respect to enforcement of the Maryland Vehicle Law. Nor does it make any reference to CP § 2-102 or the limitation on the exercise of extra-territorial enforcement of that law. Thus, the plain language of the two statutes does not limit a municipal police officer's authority to enforce the Maryland Vehicle Law pursuant to a mutual aid agreement.
It might be argued that CP § 2-105, which does not explicitly authorize officers to make arrests or conduct investigations, does not itself grant any extra-territorial law enforcement authority to police officers, but simply provides a mechanism for a local government to authorize its officers to exercise the extra-territorial authority granted in CP § 2-102. Under that reading, the limitations in CP § 2-102, including the restriction on enforcement of the Maryland Vehicle Law, would apply to officers acting under a mutual aid agreement as well.
However, the legislative chronology of the two statutes negates any suggestion that the limitations in CP § 2-102 are to be read into CP § 2-105. The predecessor of CP § 2-105, which authorized local governments to enter into mutual aid agreements for emergency situations, was first enacted in 1969. Chapter 596, Laws of Maryland 1969. The predecessor of CP § 2-102 did not exist at that time and was not enacted until 24 years later. Chapter 71, Laws of Maryland 1993. Thus, an officer's authority under a mutual aid agreement obviously did not depend on the extra-territorial authority ultimately granted in the 1993 legislation.
In 2001, the Legislature significantly broadened the scope of CP § 2-105 when it allowed mutual aid agreements for circumstances other than emergencies.[7] Chapter 188, Laws of Maryland 2001. There is no reference in the legislative file to the existing extra-territorial authority of police officers in non-emergency situations under CP § 2-102, or to the limitation in that statute on enforcement of the Maryland Vehicle Law. In any event, it does not appear that the General Assembly contemplated that a mutual aid agreement would be no more than a mechanism for officers to exercise extraterritorial authority granted under another statute.[8] Rather, in our view, by enacting CP § 2-105(e), the General Assembly delegated authority to local governments to give their police officers extra-territorial authority under a mutual aid agreement — authority that might include enforcement of the Maryland Vehicle Law in a participating jurisdiction.[9]
 III Conclusion
If a municipality enters into a mutual aid agreement under CP § 2-105 to pool its resources with those of other municipalities to operate sobriety checkpoints, its police officers may enforce the relevant provisions of the Maryland Vehicle Law in the participating jurisdictions under that agreement.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
 William R. Varga Assistant Attorney General
[1] Although stopping a driver at a sobriety checkpoint is a seizure for purposes of the federal and State constitutions, such a seizure may be reasonable, particularly if it is conducted in a manner that limits officer discretion. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444
(1990); Little v. State, 300 Md. 485, 479 A.2d 903 (1984); see also Annotation, 74 ALR 5th 319. A failure to adequately staff a sobriety checkpoint may render the resulting stops unreasonable and therefore unconstitutional. See Little, 300 Md. at 498-99, citing State v. Hilleshiem, 291 N.W.2d 314 (Iowa 1980).
[2] A police officer exercising law enforcement authority outside the officer's jurisdiction under this section must also notify the local department and the State Police. CP § 2-102(c).
[3] Apparently this restriction was included in response to concern that an officer would lack radio contact, and therefore backup assistance, outside the officer's jurisdiction. See Boston v. Baltimore County Police Dep't, 357 Md. at 398.
[4] Other statutes authorize municipal police to exercise extra — territorial law enforcement authority in circumstances not directly pertinent to your inquiry. For example, a municipal police officer has authority to enforce the Maryland Controlled Dangerous Substances Act throughout the State to the same extent as a member of the State Police, subject to certain notice requirements and in accordance with regulations adopted by the Secretary of State Police. Annotated Code of Maryland, Criminal Law Article ("CL"), § 5-802. A municipal police officer may also arrest an individual pursuant to a warrant, when the officer is participating in a joint operation under an agreement between the officer's department and the police department in the jurisdiction where the arrest occurs. CP § 2-103.
[5] The "governing body" of a municipality is defined as "the mayor and council, by whatever name known." CP § 2-105(a)(4). The governing body must enter into the mutual aid agreement "by action as in the regular routine for legislative enactment." CP § 2-105(b); see 89 Opinions of the Attorney General 76 (2004).
[6] The statute also authorizes out-of-state officers to enforce Maryland laws under a mutual aid agreement. CP § 2-105(g).
[7] A previous amendment had authorized mutual aid agreements within Allegany County without any restriction concerning emergencies. Chapter 305, Laws of Maryland 1980. Although the draft agreement that you provided recites that an emergency exists, this language is unnecessary as a result of the 2001 legislation.
[8] It is also notable that CP § 2-105(c) provides for immunity from liability for officers acting under a mutual aid agreement, a provision that would be unnecessary if a mutual aid agreement was no more than a mechanism to exercise the authority set forth in CP § 2-102, which contains its own immunity provision. See CP § 2-102(d).
[9] The concern for officer safety that apparently underlies the limitation on enforcement of the Maryland Vehicle Law in CP § 2-102 may be less compelling when there is an opportunity to address that concern in advance in a mutual aid agreement. See note 3 above. *Page 166