861 A.2d 62

**STATE of Maryland**

v.

**Chris NIEVES.**

**No. 10, Sept. Term, 2004.**

Court of Appeals of Maryland.

Nov. 15, 2004.

574

Edward J. Kelley, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner.

William E. Nolan, Assistant Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for respondent.

ARGUED BEFORE: BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

This case requires us to consider whether a strip search conducted incident to a lawful arrest for a minor traffic offense is reasonable under the Fourth Amendment. We conclude that, under the circumstances of this case, the strip search conducted incident to arrest for a minor traffic offense was unreasonable, and thus, violative of the Fourth Amendment.

## I. Background

### A. Facts

On January 22, 2002, at approximately 7:45a.m., Officers Jason Ackerman and Jason Dietz of the Hagerstown Police Department, were on patrol in their vehicle, in the area of Wakefield Road and West Franklin Street. They had stopped their vehicle approximately six feet behind a burgundy Toyota Takoma truck, which was sitting at the intersection stop sign.

While the officers were behind the truck, they noticed that the driver, later identified as Chris Nieves, was having "some kind of problem around the shifting area." The truck then began to drift back, "as if the clutch was engaged and it wasn't in gear," and struck the officers' vehicle. Officer Ackerman got out of the patrol car, approached Nieves, and asked Nieves, the sole occupant of the truck, for a valid driver's license. Nieves responded that he did not possess a valid driver's license in any state or any photo identification.

After the officers reported the accident to police dispatch, they learned that the truck was registered to a female who had been reported missing by her parents ten days earlier. In response to their question about his identity, Nieves replied that his name was "Nathan Nieves" and that his birth date was June 26, 1976. A subsequent search of police records failed to identify any person under that name. During the encounter, Nieves appeared "calm and relaxed" to the officers.

A third police officer, Jason Batistig, arrived at the scene within a matter of minutes, pursuant to police department policy, in order to investigate the accident involving the police patrol car. Officers Batistig and Dietz began to question Nieves about his identity and the truck's ownership. When asked again by the officers for his identity, Nieves supplied the same birth date but instead gave a different first name, "Chris," with the same last name. The dispatcher ran a search for "Chris Nieves" and found that Nieves' driving privileges were suspended and that a state identification card had been issued to him. When asked how he came to be in possession of the truck, Nieves responded that "he got it from a guy named Mike" from West Virginia. Officer Batistig stated that Nieves was then a little nervous, fidgety, and evasive during the interrogation. Nieves was placed under arrest for giving false information to the police and for obstructing a police officer.

Nieves consented to a pat down, after Officer Ackerman requested permission, to insure that Nieves did not have weapons, because a crime could have been committed in light

of the fact that a "female was missing." During the pat down, Officer Ackerman found a roll of money totaling $377.00 in Nieves' pocket. The officers then searched the truck that Nieves was driving and found no contraband or weapons. Officer Batistig thereafter transported Nieves to the police station.

After Officer Batistig and Nieves arrived at the Hagerstown police station, they were met by Lieutenant Richard Johnson, who was investigating the disappearance of Melissa Langdon, the registered owner of the truck Nieves was driving. Based upon information provided by Langdon's parents, Lieutenant Johnson was aware that Langdon's disappearance was allegedly linked to drugs. Lieutenant Johnson immediately recognized Nieves as having been arrested twice in the year 2000 for drug offenses.[1] Although not aware of the $377.00 found on Nieves' person, Lieutenant Johnson ordered a strip search of Nieves during the booking procedures based upon "the information regarding the missing person and the prior history of drugs." At the request of Lieutenant Johnson, Detective Schultz conducted the strip search, which produced two small plastic baggies containing individually wrapped baggies of cocaine that were protruding from Nieves' rectum.

## B. Procedural History

On January 22, 2002, Nieves was charged with possession of cocaine,[2] possession with intent to distribute

---

1. During one of the arrests, Nieves had been taken to a local detention center and the arresting officers had found money and drugs on Nieves' person. Lieutenant Johnson indicated that "as far as [he could recall]," Nieves had been charged with possession with intent to distribute as a result of either one or both of the arrests and had been convicted of those charges.

2. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 287(a) stated in relevant part:

Except as authorized by this subheading, it is unlawful for any person:
(a) To possess or administer to another any controlled dangerous substance. . . .

cocaine,[3] and five minor traffic violations: Failure to control speed,[4] driving without a valid license,[5] negligent driving,[6]

Section 287(a) was recodified without substantive change as Md.Code (2002), § 5-601 of the Criminal Law Article, effective Oct. 1, 2002.

3. Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27 § 286(a)(1) and (b)(1) provided in relevant part:

(a) *Prohibited conduct.*—Except as authorized by this subheading, it is unlawful for any person:

(1) To ... possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance....

\* \* \*

(b) *Penalty.*—Any person who violates any of the provisions of subsection (a) of this section with respect to:

(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $25,000, or both.

Sections 286(a)(1) and (b)(1) were recodified without substantive change as Md.Code (2002), §§ 5-602 and 5-607 of the Criminal Law Article, effective Oct. 1, 2002.

Under Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27 § 279(b)(4), cocaine was classified as a Schedule II substance. Section 279(b)(4) was recodified without substantive change as Md.Code (2002), § 5-403(b)(3)(iii) and (iv) of the Criminal Law Article, effective Oct. 1, 2002.

4. Md.Code (1977, 1999 Repl.Vol.), § 21-801(b) of the Transportation Article provided:

*Driver to control speed.*—At all times, the driver of a vehicle on a highway shall control the speed of the vehicle as necessary to avoid colliding with any person or any vehicle or other conveyance that, in compliance with legal requirements and the duty of all persons to use due care, is on or entering the highway.

Section 21-801(b) was derived from the former Md.Code (1957, 1976 Supp.), Art. 66½ § 11-801.

5. Md.Code (1977, 1999 Repl.Vol., 2001 Supp.), § 16-101(a) of the Transportation Article provided:

*In general.*—An individual may not drive or attempt to drive a motor vehicle on any highway in this State unless:

(1) The individual holds a driver's license issued under this title.

Section 16-101(a) is derived from the former Md.Code (1957, 1976 Supp.), Art. 66½ § 6-101.

6. Md.Code (1977, 1999 Repl.Vol., 2000 Supp.), § 21-901.1(b) of the Transportation Article provided:

giving a false name,[7] and giving false accident report information.[8] Nieves was also charged with the common law crimes of obstructing and hindering a police officer. Prior to trial, Nieves filed a motion to suppress the cocaine that was seized during the strip search arguing that the arrest was unlawful and the strip search was unreasonable under the Fourth Amendment. On May 22, 2002, a suppression hearing was held on the motion, during which the court heard testimony from Officers Jason Ackerman, Jason Batistig, and Lieutenant Richard Johnson, and admitted the stipulated testimony of Detective Schultz. The officers' testimony recounted the facts as they have been presented here.

In an order dated June 7, 2002, the Circuit Court denied Nieves' motion to suppress stating that "detaining the defendant under the totality of the circumstances and the subsequent search were reasonable." On October 8, 2002, the case proceeded to a bench trial in which Nieves was convicted of possession with intent to distribute cocaine and the lesser included offense of possession of cocaine. Subsequently, Nieves was sentenced to ten years imprisonment without the possibility of parole. He was also convicted of driving without a license, negligent driving, and failure to control speed, for

---

*Negligent driving.*—A person is guilty of negligent driving if he drives a motor vehicle in a careless or imprudent manner that endangers any property or the life or person of any individual.
Section 21–901.1(b) was derived from the former Md.Code (1957, 1976 Supp.), Art. 66½ § 11–901.

7. Md.Code (1977, 1999 Repl.Vol.), § 16.112(e) of the Transportation Article provided:

 (e) *Giving false name.*—A person may not give the name of another person to any uniformed officer who is attempting to determine the identity of a driver of a motor vehicle.
Section 16.112(e) was derived from the former Md.Code (1957, 1976 Supp.), Art. 66½ § 6–112.

8. Md.Code (1977, 1999 Repl.Vol.), § 20–108 of the Transportation Article provided:

 A person may not give any information that he knows or has reason to believe is false in any oral or written report required by this title.
Section 20–108 was derived from the former Md.Code (1957), Art. 66½ § 10–108.

which the court imposed monetary fines. The court found Nieves not guilty of the charges of obstructing an officer, giving false information, and giving false accident report information.

On appeal to the Court of Special Appeals, Nieves argued that the Circuit Court's denial of the suppression motion should be reversed because the officers lacked probable cause to arrest him. Nieves also argued that the officers lacked reasonable suspicion to strip search him subsequent to his arrest for a minor traffic offense and that the search was unconstitutional as violative of the Fourth Amendment.

The Court of Special Appeals addressed the probable cause issue and found that the officers lacked probable cause to arrest Nieves for obstructing an officer. The court found, however, that the officers did have probable cause to arrest Nieves for the multiple traffic violations. Because probable cause existed, the court reasoned, a search incident to the arrest was permissible under the circumstances.[9]

The Court of Special Appeals then turned to the question of whether the officers had reasonable, articulable suspicion to strip search Nieves incident to arrest for minor offenses and concluded that the strip search was unreasonable under the Fourth Amendment. The court applied a balancing test by weighing Nieves' privacy interests against the government interest in conducting the strip search. In applying the balancing test, the intermediate appellate court held that strip searches incident to an arrest for a minor offense should not occur unless the arresting officer has a reasonable, articulable suspicion that the individual is *presently* in possession of weapons or contraband. The court further reasoned that conducting a strip search solely on Nieves' past criminal record would create a *per se* rule that would shift the determination of reasonable suspicion from the individual arrestee to a class or category of offenders. Additionally, the court noted

---

9. The probable cause issue was not raised on appeal to this Court; therefore, we assume that probable cause existed for the arrest.

that it was "far too great a leap to conclude that any possible narcotics involvement of the missing female *ipso facto* carried over to [Nieves] simply because he was the driver of the vehicle." Thus, the court concluded that based upon the totality of the circumstances, the officers lacked reasonable, articulable suspicion to conduct the strip search and reversed the judgment of the trial court.

The State filed a petition for a writ of certiorari in this Court to consider the following question:

Did the Court of Special Appeals err when it determined that the strip search conducted by the police was unreasonable under the Fourth Amendment?

We granted the petition and issued the writ of certiorari. *State v. Nieves,* 380 Md. 617, 846 A.2d 401 (2004). We hold that under the circumstances of this case, the strip search was unreasonable as a search incident to arrest for a minor crime, and therefore, Nieves' motion to suppress the evidenced seized from the search should have been granted. Thus, we affirm the judgment of the Court of Special Appeals.

## II. Standard of Review

In reviewing a Circuit Court's grant or denial of a motion to suppress evidence under the Fourth Amendment, we ordinarily consider only the information contained in the record of the suppression hearing and not the trial record. *Laney v. State,* 379 Md. 522, 533, 842 A.2d 773, 779 (2004); *Dashiell v. State,* 374 Md. 85, 93, 821 A.2d 372, 376 (2003) (quoting *State v. Collins,* 367 Md. 700, 706–07, 790 A.2d 660, 663–64 (2002)) (citing *Ferris v. State,* 355 Md. 356, 368, 735 A.2d 491, 497 (1999)). We view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the prevailing party on the motion. *Laney,* 379 Md. at 533, 842 A.2d at 779; *Dashiell,* 374 at 93, 821 A.2d at 376–77 (quoting *Collins,* 367 Md. at 707, 790 A.2d at 664)(citing *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990)). Although we extend great deference to the hearing judge's findings of fact and will not disturb them unless clearly erroneous, we review, independently, the application of the law

to those facts to determine if the evidence at issue was obtained in violation of the law and, accordingly, should be suppressed. *Laney,* 379 Md. at 533–34, 842 A.2d at 779–80; *Dashiell,* 374 Md. at 93–94, 821 A.2d at 378 (citing *Lancaster v. State,* 86 Md.App. 74, 95, 585 A.2d 274, 284 (1991)); *State v. Rucker,* 374 Md. 199, 207, 821 A.2d 439, 444 (2003).

## III. Discussion

The State asserts that the Court of Special Appeals erred in holding that the strip search was unreasonable under the Fourth Amendment because the search was not supported by reasonable, articulable suspicion that Nieves was concealing a weapon or contraband on his person. In the State's view, the reasonable suspicion standard for conducting strip searches incident to arrest requires a minimal level of objective justification and should be based upon the totality of the circumstances when assessing the reasonableness of the officer's basis for conducting the strip search. According to the State, because Nieves was driving the truck of a missing person suspected of being involved in drug activity, had failed to properly identify himself when questioned by the police, and had a criminal history involving drugs, reasonable, articulable suspicion justifying the strip search in this case had been created. Consequently, the State argues, the judgment of the intermediate appellate court should be reversed.

Nieves' argument, quite understandably, adheres to the analysis of the Court of Special Appeals. He maintains that the test for reasonableness of the officer's basis for conducting the strip search involves balancing the privacy interests of the person being searched against the government's need for conducting the search. Nieves argues that the police must have reasonable, articulable suspicion to conduct a strip search under the search incident to arrest exception to the Fourth Amendment, when the arrest is for a minor traffic offense. Nieves asserts that Lieutenant Johnson did not have reasonable, articulable suspicion that Nieves was carrying weapons or contraband. Even considering the totality of the circumstances, Nieves maintains that Lieutenant Johnson based his

decision to order the strip search solely on Nieves' prior criminal history and his connection to a missing girl's truck. Those circumstances, according to Nieves, do not amount to reasonable, articulable suspicion justifying a strip search incident to arrest. For the reasons stated below, we agree.

## A. Fourth Amendment and Search Incident to Arrest

■■ The Fourth Amendment of the United States Constitution, made applicable to the State of Maryland through the Fourteenth Amendment, guarantees individuals the right to be secure in "their persons, houses, papers and effects against unreasonable searches and seizures." *Mapp v. Ohio*, 367 U.S. 643, 647, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081, 1085 (1961); *Laney*, 379 Md. at 545, 842 A.2d at 786. It is axiomatic that the Fourth Amendment only prohibits those searches and seizures that are unreasonable under the circumstances. *See Carter v. State*, 367 Md. 447, 458, 788 A.2d 646, 652 (2002) (citing *Gadson v. State*, 341 Md. 1, 9, 668 A.2d 22, 26 (1995)), *cert denied*, 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996); *Little v. State*, 300 Md. 485, 493, 479 A.2d 903, 907 (1984). In determining the reasonableness of a search, each case requires a balancing of the government's need to conduct the search against the invasion of the individual's privacy rights. *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979).

■ Furthermore, it is well established that warrantless searches are *per se* unreasonable under the Fourth Amendment absent some recognized exception. *Gamble v. State*, 318 Md. 120, 123, 567 A.2d 95, 97 (1989). A search incident to a lawful arrest is one of the well delineated exceptions to the warrant requirement. *See Carter*, 367 Md. at 460–61, 788 A.2d at 653–54; *State v. Evans*, 352 Md. 496, 516, 723 A.2d 423, 432–33, *cert denied*, 528 U.S. 833, 120 S.Ct. 310, 145 L.Ed.2d 77 (1999); *Ricks v. State*, 322 Md. 183, 188, 586 A.2d 740, 743 (1991) (citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

The Supreme Court in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), articulated the bases for a search incident to arrest, those being, "to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape . . . . [or] to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694; *see also United States v. Edwards*, 415 U.S. 800, 802–03, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771, 775 (1974); *United States v. Robinson*, 414 U.S. 218, 226, 94 S.Ct. 467, 472, 38 L.Ed.2d 427, 435 (1973); *Carter*, 367 Md. at 460, 788 A.2d at 653.

Likewise, in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court allowed a full search of the person, including a pat-down of his pockets and their contents as incident to a lawful arrest. *Id.* at 221–24, 94 S.Ct. at 470–71, 38 L.Ed.2d at 433–34. In *Robinson*, a police officer suspected the defendant of driving without an operator's permit based upon a previous check of the defendant's operator's permit four days earlier. *Id.* at 220, 94 S.Ct. at 469–70, 38 L.Ed.2d. at 432. The defendant was stopped by the officer, arrested for driving without a valid operator's permit, and patted down after getting out of the vehicle. *Id.* During the pat-down, the officer found a cigarette pack in the defendant's front coat pocket, which the officer opened and found several vials of heroin. *Id.* at 222–23, 94 S.Ct. at 470–71, 38 L.Ed.2d at 434. The officer then proceeded to search the defendant's waist, pants, and remaining pockets. *Id.* Subsequently, the defendant was convicted for possession of heroin and he appealed challenging the validity of the area of his person. *Id.* at 220, 94 S.Ct. at 469, 38 L.Ed.2d at 432.

Chief Justice Rehnquist, writing for the Court, explained that the decision of an arresting officer to search a person incident to a lawful arrest "is necessarily a quick *ad hoc* judgment" and that the potential danger that the arrestee is carrying weapons provides "an adequate basis for treating all custodial arrests alike for purposes of [the] search justification." *Id.* at 235, 94 S.Ct. at 476–77, 38 L.Ed.2d at 440.

Consequently, the Court held that police officers are not required to assess the likelihood that the arrestee is carrying weapons or concealing evidence; rather, the officers may undertake a "full search" of the arrestee. *Id.* The Court established that a full search incident to arrest can involve "a relatively extensive exploration of the person," aimed toward locating weapons, or evidence that could be concealed or destroyed. *Id.* at 227, 94 S.Ct. at 473, 38 L.Ed.2d at 436 (quoting *Warden v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)); *see also Carter,* 367 Md. at 461, 788 A.2d at 654 (recognizing that the right of an officer to search a person "follows automatically from the arrest.") (citing *Evans,* 352 Md. 496, 508, 723 A.2d 423, 429, *cert denied,* 528 U.S. 833, 120 S.Ct. 310, 145 L.Ed.2d 77 (1999)).

In *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Court held that jail administrators could exchange and search the clothes of an individual who had been arrested and detained. *Id.* at 801–02, 94 S.Ct. at 1236, 39 L.Ed.2d at 775. The Court stated that exchanging and searching the detainee's clothes for evidence one day after his arrest was a normal search incident to a custodial arrest and that the delay in the search was reasonable because the search could have been conducted at the time of the arrest. *Id.* at 805, 94 S.Ct. at 1238, 39 L.Ed.2d at 777. The Court observed that it is customary to search an arrestee who is being processed for confinement and that such searches are reasonable. *Id.* at 804–05, 94 S.Ct. at 1238, 39 L.Ed.2d at 776. *See also Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (holding that a search of a suitcase that could have been made at the arrest scene was allowed at a later time in the detention center).

Nevertheless, the Supreme Court has not addressed the validity of strip searches incident to an arrest; in *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), the Court explicitly stated that, "[w]e were not addressing in *Edwards,* and do not discuss here, the circumstances in which a strip search of an arrestee may or may not be appropriate." *Id.* at 646 n. 2, 103 S.Ct. at 2609 n. 2, 77 L.Ed.2d at 71 n. 2.

## B. Strip Searches

The term "strip search" has been defined and used in differing contexts in Fourth Amendment jurisprudence. In general, strip searches involve the removal of the arrestee's clothing for inspection of the under clothes and/or body. *See* William J. Simonitsch, *Visual Body Cavity Searches Incident to Arrest: Validity Under the Fourth Amendment*, 54 U. MIAMI L.REV. 665, 667 (2000). Some have defined strip searches to also include a visual inspection of the genital and anal regions of the body. *Id.* BLACK'S LAW DICTIONARY (7th Ed.2004) defines a strip search as "a search of a person conducted after that person's clothes have been removed, the purpose usually being to find any contraband the person might be hiding." Likewise, in the instant case, the Hagerstown Police Department procedural rules (Departmental Rules), define a strip search as "any search of an individual requiring the removal or rearrangement of some or all clothing to permit the visual inspection of the skin surfaces of the genital areas, breasts, and/or buttocks". *See* Departmental Rules, § 18.11.2.1. There is a distinction between a strip search and other types of searches, such as body cavity searches, which could involve visually inspecting the body cavities or physically probing the body cavities. *Simonitsch, supra*, at n. 9. Based upon the record, it appears that a strip search was conducted rather than a physical body cavity search.

It is clear that strip searches by their very nature can be degrading and invasive. *See Wood v. Clemons*, 89 F.3d 922, 928 (1st Cir.1996) (stating that "a strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of an individual."); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir.1983) (noting that "strip searches involving the visual inspection of the anal and genital areas [are] . . . . demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission."); *John Does 1–100 v. Boyd*, 613 F.Supp. 1514, 1522 (D.Minn.1985)(commenting that the "experience of disrobing and exposing one's self for visual inspection by a stranger

clothed with the uniform and authority of the state, in an enclosed room inside a jail, can only be seen as thoroughly degrading and frightening."); *Deserly v. Department of Corrections*, 298 Mont. 328, 995 P.2d 972, 977 (2000) (noting that being strip searched "is an embarrassing and humiliating experience"); *Draper v. Walsh*, 790 F.Supp. 1553, 1559 (W.D.Okla.1991) (stating, "Strip searches can be described by a number of adjectives, but being dignified is not one of their number").[10]

Even though intrusive, however, strip searches have been permitted under the Fourth Amendment in various settings. *See Bell*, 441 U.S. at 523–24, 99 S.Ct. at 1864, 60 L.Ed.2d at 458–59 (strip search allowed of pretrial detainee in a detention center); *United States v. Dorlouis*, 107 F.3d 248 (4th Cir.1997) (strip search in a police van was allowed because the defendant was suspected of hiding money related to his arrest for drug possession).

Strip searches commonly have been upheld for two reasons: (1) as a means to maintain the security of the detention facility; and (2) as a search incident to arrest. *See* 3 Wayne LaFave, *Search and Seizure* § 5.3(a) at 108–09 (3d ed.1996). Although this Court has not specifically addressed the issue of strip searches in an institutional setting or as a search incident to arrest, various courts have done so in the context of a suit brought by the arrestee for damages for violation of his/her

---

**10.** In the instant case, the Departmental Rules also acknowledge the intrusive nature of strip searches. They provide:

This Department recognizes that the use of strip searches ....may, under certain conditions, be necessary to protect the safety of officers, civilians and other prisoners; to detect and secure evidence of criminal activity and to safeguard the security, safety and related interests of this agency's holding facility. Recognizing the intrusiveness of these searches on individual privacy, however, it is the policy of this Department that such searches shall be conducted only with proper authority and justification, with due recognition and deference for the human dignity of those being searched and in accordance with the procedural guidelines for conducting such searches as set forth in this policy.

Departmental Rules, Section 18.1.1.

constitutional rights and have delineated various factors to be assessed.

In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court addressed the permissible scope of searches incident to arrest that occurred in association with pretrial detention. *Id.* at 523, 99 S.Ct. at 1866, 60 L.Ed.2d at 458. Several defendants brought a class action suit challenging detention policies requiring pre-trial detainees to be subjected to a "visual body cavity" search every time the detainee had contact with individuals outside of the institution. *Id.* The Court assessed the reasonableness of these searches by stating:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884, 60 L.Ed.2d at 481. Because penal institutions face unique security challenges arising from the possibility of having contraband and weapons brought into the institution, the Court held that the searches were reasonable and could be conducted on less than probable cause that the detainee was carrying weapons or contraband. *Id.* at 559, 99 S.Ct. at 1884–85, 60 L.Ed.2d at 481–82. Justice Powell, concurring in part and dissenting in part, suggested that reasonable suspicion should be the level required to justify the "visual body cavity" searches that occurred in the case. *Id.* at 563, 99 S.Ct. at 1886, 60 L.Ed.2d at 484.

Since *Bell*, a number of courts that have examined institutional policies attempting to prevent detainees from bringing weapons and contraband into the institution and have required that the strip search be based upon reasonable suspicion that the individual was carrying weapons or contraband at the time

of arrest. *See Swain v. Spinney,* 117 F.3d 1, 7 (1st Cir.1997) (holding that there must be reasonable suspicion that the detainee will carry weapons or contraband into the prison or the detainee is concealing evidence); *Justice v. Peachtree City,* 961 F.2d 188, 193 (11th Cir.1992) (explaining that the officers must have reasonable suspicion that the detainee is concealing evidence or will bring weapons or drugs into the prison); *Masters v. Crouch,* 872 F.2d 1248, 1255 (6th Cir.1989) (noting that an officer could have reasonable suspicion that a detainee is concealing weapons or contraband if the crime was related to a major felony); *Watt v. Richardson Police Dept.,* 849 F.2d 195, 198 (5th Cir.1988) (explaining that reasonable suspicion that the defendant was carrying weapons or contraband did not exist solely based upon the defendant's criminal history); *Weber v. Dell,* 804 F.2d 796, 800 (2nd Cir.1986) (holding that the officers lacked reasonable suspicion to believe that the defendant was concealing contraband because the defendant had only been arrested for falsely reporting a crime, which did not relate to contraband); *Stewart v. County of Lubbock,* 767 F.2d 153, 156–57 (5th Cir.1985) (holding that jail authorities had no reasonable suspicion to believe that the defendant was carrying weapons or drugs simply because he had a prior drug history); *Mary Beth G.,* 723 F.2d at 1271 n. 7 (held strip search of detainees arrested for minor offenses unreasonable because the officers lacked reasonable suspicion that the detainees were carrying weapons or contraband that could be introduced into the prison); *Holton v. Mohon,* 684 F.Supp. 1407, 1415 (N.D.Tex.1987) (holding that strip searches of pretrial detainees must be based upon reasonable suspicion that the detainees were carrying contraband or weapons).

■ Reasonable suspicion has been defined as being more than a " 'mere hunch,' but is 'a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 675–76, 145 L.Ed.2d 570, 576 (2000); *Nathan v. Maryland,* 370 Md. 648, 663, 805 A.2d 1086,

1095 (2002).[11] In discussing the concept of reasonable suspicion, the United States Supreme Court has opined that, "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible," *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911, 918 (1996), but such terms are "commonsense, nontechnical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' " *Id.* A determination of whether reasonable suspicion exists to justify a search is made by looking at the totality of the circumstances. In this regard, the Court stated:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'.

*United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 749–50, 151 L.Ed.2d 740, 746 (2002); *Ransome v. State*, 373 Md. 99, 104–05, 816 A.2d 901, 904 (2003); *Nathan*, 370 Md. at 663, 805 A.2d at 1095 (internal citations omitted).

Strip searches of detainees have been permitted when a felony or violent misdemeanor is the subject of the charge. *See Roberts v. Rhode Island*, 239 F.3d 107, 112 (1st Cir.2001) ("The reasonable suspicion standard may be met simply by the fact that the inmate was charged with a violent felony.");

---

11. Although not dispositive in any way regarding the constitutional issue in this case, the Departmental Rules in the case *sub judice* address the reasonable suspicion standard in relation to minor crimes, stating: "Individuals arrested for traffic violations and other minor offenses of a nonviolent nature shall not be subject to strip searches unless the arresting officer has articulable, reasonable suspicion to believe that the individual is concealing contraband or weapons." Departmental Rules, Section 18.11.2.5.

*Watt,* 849 F.2d at 198 (explaining that a strip search is inherently based upon reasonable suspicion when the detainee is charged with or has a criminal history of contraband or weapons); *Giles v. Ackerman,* 746 F.2d 614, 617 (9th Cir.1984) (recognizing a detainee's prior arrest record as a factor in determining whether the officer had reasonable suspicion that the detainee was carrying weapons or contraband); *Dufrin v. Spreen,* 712 F.2d 1084, 1087–89 (6th Cir.1983) (upholding strip search as reasonable based upon a felony charge that was considered to be a crime of violence.); *Smith v. Montgomery County,* 643 F.Supp. 435, 439 (D.Md.1986) (holding that an officer may have valid reasonable suspicion that a detainee is carrying drugs or weapons when the detainee has a prior record involving drugs or weapons or if the person has been arrested for a felony); *but see Kennedy v. Los Angeles Police Department,* 901 F.2d 702, 714, 716 (9th Cir.1989) (holding that the "felony/misdemeanor classification *alone* indicates little about the likelihood of the [detainee] concealing drugs, weapons, or contraband ...," however, "[g]rand theft, a felony ... could be *considered* " as a factor to determine reasonable suspicion of the detainee concealing weapons or contraband) (emphasis added)).

One of our sister states had occasion to address the appropriateness of a strip search incident to a *felony* arrest. In *State v. Jenkins,* 82 Conn.App. 111, 842 A.2d 1148 (2004), an undercover police officer, after having been informed that the defendant was dealing drugs, arranged to buy heroin from him. *Id.* at 1151. When Jenkins approached the officer and attempted to sell the heroin, the officer placed Jenkins under arrest, conducted a pat down, and noticed that an object was protruding from Jenkins' pants. *Id.* The officer pulled down Jenkins' pants and underwear and discovered several glass vials of crack and heroin protruding from Jenkins' buttocks. *Id.* As a result, Jenkins was charged with possession of narcotics with the intent to distribute and convicted. *Id.*

The intermediate appellate court of Connecticut, faced with a Fourth Amendment challenge to the strip search, held that probable cause did exist to arrest and that the strip search

was valid as a search incident to arrest. *Id.* at 1154. The court explained that the justification for an officer to search incident to a lawful arrest is predicated upon the need to "disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Id.* at 1157. When the arrest is for a felony offense, the officer must have a reasonable and articulable suspicion to believe that the arrestee is carrying weapons or contraband. *Id.* at 1156. The court defined reasonable suspicion as the officer's "specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 1157. In upholding the search, the court applied the balancing test articulated in *Bell,* and explained that the officer had reason to believe that Jenkins was carrying contraband because the officer was meeting Jenkins presumably to buy heroin. *Id.* The court also noted that the nature of the offense for which Jenkins was arrested created the suspicion necessary to justify the strip search. *Id.* Based on those factors, the court found that reasonable suspicion existed to conduct the search of Jenkins; therefore, the search was reasonable. *Id.* at 1158.

Strip searches conducted of detainees who had been arrested for *minor* offenses not associated with weapons or contraband generally have been found wanting, unless the officer had information that would have led the officer to have reasonable suspicion that the person was carrying weapons or contraband at the time of arrest. *See Roberts,* 239 F.3d at 112 (strip search unreasonable based upon arrest for an "outstanding body attachment," a misdemeanor, because there was no evidence that the defendant was carrying weapons or contraband at the time of arrest); *Edwards v. State,* 759 N.E.2d 626, 629 (Ind.2001) (strip search of arrestee charged with speeding and giving a false name held unconstitutional due to the absence of reasonable suspicion that the defendant had weapons or contraband on his person during the arrest); *People v. Kelley,* 306 A.D.2d 699, 762 N.Y.S.2d 438, 440 (N.Y.App.Div. 2003) (strip search unreasonable because the officers did not have reasonable suspicion that the defendant was carrying

weapons or contraband at the time of arrest, where the arrest was for driving without a driver's license); *People v. Jennings,* 297 A.D.2d 644, 747 N.Y.S.2d 235, 236 (N.Y.App.Div.2002) (strip search conducted incident to an arrest for a routine traffic stop was unreasonable because the officers lacked reasonable suspicion that the defendant was carrying weapons or contraband at the time of arrest); *State v. Pena,* 869 P.2d 932, 941 (Utah 1994) (strip search of a person arrested for providing false information to an officer held unreasonable because the officer lacked reasonable suspicion that the arrestee was carrying weapons or contraband on his person); *Taylor v. Commonwealth,* 28 Va.App. 638, 507 S.E.2d 661, 664 (1998) (strip search for minor non-jailable offense held unreasonable when arrest was for public intoxication and there was no reasonable suspicion that the defendant was carrying weapons or contraband at the time of arrest).[12]

Several courts have also addressed the minor crime distinction in the civil context, where defendants filed suits against police departments challenging strip search policies for arrestees. Those courts held that conducting strip searches of detainees arrested for minor offenses must be justified by reasonable suspicion that the individual is carrying weapons or contraband at the time of arrest. *See Swain,* 117 F.3d at 9 (holding strip search unconstitutional based upon arrest for non-felony matter because the type of offense did not indicate reasonable suspicion that the arrestee was carrying weapons or contraband at the time of arrest).[13]

---

**12.** A minority of courts have applied the probable cause standard to determine whether the officer was reasonable to strip search individuals arrested for minor traffic offenses. *See Tinetti v. Wittke,* 479 F.Supp. 486, 491 (E.D.Wis.1979), *affirmed,* 620 F.2d 160 (7th Cir.1980); *Burns v. Loranger,* 907 F.2d 233, 236 (1st Cir.1990); *Commonwealth v. Thomas,* 429 Mass. 403, 708 N.E.2d 669, 673 (1999); *Elk v. Townson,* 839 F.Supp. 1047, 1052 (S.D.N.Y.1993); *DiLoreto v. Borough of Oaklyn,* 744 F.Supp. 610, 621 (D.N.J.1990).

**13.** *Wachtler v. County of Herkimer,* 35 F.3d 77, 81 (2nd Cir.1994)(strip search held unreasonable after defendant was arrested for speeding because there was no reasonable suspicion to believe that the defendant was carrying weapons or drugs on his person); *Chapman v. Nichols,*

989 F.2d 393, 395–98 (10th Cir.1993) (strip search was unreasonable where the detainee was arrested for speeding and driving without a license—charges that were unrelated to drugs or weapons); *Justice,* 961 F.2d at 193 (strip search of teenager arrested for loitering and truancy must be justified by reasonable suspicion that the teenager was carrying weapons or contraband at the time of arrest); *Masters,* 872 F.2d at 1255 (strip search unreasonable for minor offenses of failure to appear for expired registration plates and for failure to maintain auto insurance); *Walsh v. Franco,* 849 F.2d 66, 68–69 (2nd Cir.1988) (strip search of person arrested on bench warrant for outstanding parking ticket held unreasonable because minor offenses do not implicate the need to search for weapons or contraband on the person); *Watt,* 849 F.2d at 199 (strip search unreasonable when person was arrested on outstanding warrant for failure to register his dog); *Weber,* 804 F.2d at 802 (strip search of arrestee who was charged with falsely reporting an incident and resisting arrest violated the Fourth Amendment because the arrest was unrelated to the arrestee having drugs or weapons in his person); *Stewart,* 767 F.2d at 156–57 (strip search unconstitutional based on arrest for minor crimes—public intoxication and bad check writing, without proof that the officers had reasonable suspicion that the arrestee was carrying weapons or drugs on his person); *Jones v. Edwards,* 770 F.2d 739, 740–42 (8th Cir.1985) (strip search of the defendant, who was arrested for violating animal leash law, was unreasonable because the arrest was unrelated to drugs or weapons); *Giles,* 746 F.2d at 617–18 (strip search of detainee was unreasonable because the minor offense, driving with expired automobile tags, did not give rise to reasonable suspicion that the detainee was carrying weapons or drugs at the time of arrest); *Hill v. Bogans,* 735 F.2d 391, 393–94 (10th Cir.1984) (strip searching detainees arrested for failing to appear on charges of speeding and violating a license restriction was held unconstitutional because the charges were unrelated to finding weapons or contraband in the individual during the arrest); *Dufrin,* 712 F.2d at 1087; *Mary Beth G.,* 723 F.2d at 1273 (strip search conducted of individual arrested for parking tickets and driving without a license held unconstitutional because the charges did not implicate a need to search for weapons or drugs); *Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir.1981) (strip search of person arrested for driving while intoxicated was unreasonable because the arrest was for a minor offense and was not related to weapons or contraband); *Helton v. United States,* 191 F.Supp.2d 179, 184–85 (D.D.C.2002) (strip searching arrestees charged with misdemeanors or other minor crimes is unreasonable unless reasonable suspicion exists that the arrestee is carrying weapons or contraband at the time of arrest); *Draper,* 790 F.Supp. at 1559 (strip search of a person arrested for public intoxication held unreasonable because the officers lacked reasonable suspicion that the arrestee was carrying weapons or contraband during the arrest); *Kathriner v. City of Overland,* 602 F.Supp. 124, 125 (E.D.Mo.1984) (strip searches of individuals charged with a misdemeanor or ordinance violation was unreasonable because the charges were unrelated to weapons or drugs); *Hunt v. Polk County,* 551 F.Supp. 339, 344–45 (S.D.Iowa 1982) (must have reasonable suspicion that a detainee is carrying weapon or drugs

In *Edwards v. State,* 759 N.E.2d 626 (Ind.2001), the defendant, Michael Edwards, was arrested for giving police officers false information after being questioned about his identity. *Id.* at 628. Subsequent to the arrest, the officers transported Edwards to the police station, conducted a strip search, and found cocaine protruding from Edwards' buttocks. *Id.* Edwards was later convicted for possession of cocaine and appealed arguing that the cocaine was seized illegally. *Id.*

On appeal, the Supreme Court of Indiana held that the search was unreasonable as a search incident to arrest. *Id.* at 630. The court explained that because the strip search was incident to an arrest for a minor offense, the search must be justified by reasonable suspicion that Edwards was carrying weapons or contraband. *Id.* at 629–30. According to the Court, "[t]here may be misdemeanor charges for which a body search is appropriate because of the reasonable likelihood of discovery of evidence, but, false informing, without more, is certainly not such a crime." *Id.* at 629. Because Edwards had only been arrested for a non-violent misdemeanor, and the circumstances surrounding Edwards' arrest did not create the reasonable suspicion necessary to conduct the search, the court held that the search was unreasonable. *Id.* at 630.

## C. Nieves' Strip Search

In the case *sub judice,* we are not dealing with a situation where institutional safety is at issue. The State has conceded that this case does not involve institutional policies of strip searching individuals prior to entering prison because the record is devoid of any evidence that Nieves was confined. Therefore, in the present case, where the person has been arrested for a minor traffic offense unrelated to drugs or violence, is a strip search justified, and what standard should be used to evaluate its reasonableness?

---

in order to strip search a person arrested for speeding and an outstanding warrant); *Rankin v. Colman,* 476 So.2d 234, 238 (Fla.App.1985) (strip searches of individuals arrested for vehicle and traffic offenses are unreasonable because those offenses are unlikely to yield weapons or evidence of crime).

 It is clear that arrestees, such as Nieves, whether or not they face detention, may conceal weapons and contraband underneath their clothes and on their person, so that the traditional rationales underlying searches incident to arrest apply. *See Edwards*, 415 U.S. at 805, 94 S.Ct. at 1238, 39 L.Ed.2d at 776; *Robinson*, 414 U.S. at 235, 94 S.Ct. at 476, 38 L.Ed.2d at 440; *Jenkins*, 842 A.2d at 1151; *Edwards v. State*, 759 N.E.2d at 630; *Jennings*, 747 N.Y.S.2d at 236. Insofar as the standard to evaluate reasonableness, our jurisprudence is replete with the use of "reasonable, articulable suspicion" to determine the reasonableness of searches conducted in other contexts. *See Ransome*, 373 Md. at 106–07, 816 A.2d at 905 (applying the reasonable, articulable suspicion standard that the arrestee was concealing weapons or evidence to evaluate the reasonableness of a *Terry* frisk); *Carter v. State*, 367 Md. 447, 788 A.2d 646 (2002) (evaluating the search of a lunch bag incident to the defendant's arrest using reasonable, articulable suspicion to determine if the defendant was carrying weapons or evidence of a crime); *Nathan*, 370 Md. at 664–65, 805 A.2d at 1095–96 (assessing the reasonableness of a warrantless search of a vehicle passenger utilizing the reasonable, articulable suspicion standard); *Stokes v. State*, 362 Md. 407, 765 A.2d 612 (2001) (requiring reasonable, articulable suspicion that the arrestee had committed a robbery in order to conduct an investigatory stop and warrantless search). Accordingly, based upon our own jurisprudence and utilizing the experience and analyses of many other courts addressing the reasonableness of strip searches, we hold that the reasonable, articulable suspicion standard applies in the strip search incident to arrest context.

 Using this standard, the strip search of Nieves was not reasonable. The very nature of the minor traffic violations for which Nieves was apprehended did not create a suspicion that he was carrying weapons or contraband at the time of arrest. Rather, during the suppression hearing, Lieutenant Johnson testified that he ordered a strip search of Nieves for the following reasons: (1) because of Nieves' prior drug arrests and (2) because at the time of his arrest, Nieves was driving

the truck of a missing female, who had a history of drug involvement and was reported missing. When questioned during the hearing, Lieutenant Johnson explained that those two were the only justifications for ordering the strip search:

Q: And what action, if any, did you take at that time?

A: When they were doing the booking procedures obviously the search and subsequent fingerprint processing, photographs and so forth I indicated to them because of his prior drug activity and the knowledge that I had at that time that he needed to be strip searched.

\* \* \*

Q: And you gave that order?

A: Yes, I did.

Q: Besides the information regarding the missing person and the prior history of drugs, . . . . was there anything else that you based the order on or was that it?

A: No, that was it at the time.

Lieutenant Johnson's rationale falls short of meeting the reasonable, articulable suspicion standard. Prior drug arrests do not necessarily yield reasonable suspicion that an individual is secreting weapons or drugs on his person at the time of his arrest on a drug offense, because to allow the reasonable, articulable suspicion standard to be satisfied based upon a person's status, rather than an individualized assessment of the circumstances, would undermine the purpose for requiring officers to justify their reasons for searching a particular individual. See Richards v. Wisconsin, 520 U.S. 385, 392–93, 117 S.Ct. 1416, 1420–21, 137 L.Ed.2d 615, 622 (1997) (stating, "[i]f a per se exception were allowed for each category of criminal investigation that included a considerable [ ] risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless"); see also State v. Lee, 374 Md. 275, 308, 821 A.2d 922, 941 (2003). Also, the fact that the defendant was driving the truck of a missing female associated with drugs confuses the nature of the inquiry of

whether there was reasonable, articulable suspicion that Nieves was carrying weapons or drugs. The circumstances surrounding another person cannot be imputed to the person who is the subject of the search because the inquiry must be particularized and objectively based upon the person suspected of carrying weapons or contraband. *See Nathan*, 370 Md. at 663, 805 A.2d at 1095.

The State, nevertheless, argues that the Court of Special Appeals' opinion in *Fontaine v. State*, 135 Md.App. 471, 762 A.2d 1027 (2000), is directly applicable. In *Fontaine*, the defendant was arrested for driving on a suspended driver's license. *Id.* at 475, 762 A.2d at 1030. The arresting officers, who recognized the defendant from a previous encounter for driving without a license and noticed the defendant making suspicious movements. *Id.* The intermediate appellate court applied the reasonable suspicion standard and the *Wolfish* balancing test to determine that the "officer had at least reasonable suspicion to perform a strip search incident to [Fontaine's] arrest." *Id.* at 482, 762 A.2d at 1033. Because Fontaine was fidgeting during the police encounter, attempted to try to place an object in his pants, and the officer had prior information as to where Fontaine normally concealed contraband, the court found that the strip search was reasonable. *Id.* Unlike the defendant in *Fontaine*, the present record is devoid of additional indicia of suspicious movements and attempts to conceal weapons or contraband; Nieves had consented to a pat down of his person and he was described as "calm and relaxed."

Under the circumstances of this case, the strip search conducted incident to arrest for a minor traffic violation was unreasonable and violated the Fourth Amendment. Although there may be circumstances in which a strip search may be conducted incident to a lawful arrest, the strip search of Chris Nieves was not one of them.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.*